## M. T. BRUCE v. THE STATE.

*No. 902.   Decided April 29th, 1896.*

| 36   53
| f37  127

**1. Local Option—Order for Election.**

Where it appeared that the order, entered on the minutes of the Commissioners' Court for a local option election, showed interlineations made by the clerk, under directions of the County Judge, during the term and for the purpose of making the order complete, and that thereafter, before adjournment for the term, the minutes with the interlineations in said order were read to, and approved by the court. Held: The fact of the interlineation which was thus made to complete the order, did not invalidate the order.

**2. Amendments of Judgments or Orders of Court.**

A court has authority to correct or amend its judgments or orders at any time during the term at which they were made and entered.

**3. Local Option—Orders for the Election and Declaring the Result in Justice's Precinct.**

When a local option election is ordered for, "Justice's Precinct No. 1," it is not necessary to set out the metes and bounds of the territory in said order; nor is it necessary to the validity of the order, declaring the result of the election in said precinct, that it should recite, that notices for the election were duly posted.

**4. Same—Order Declaring Result Prima Facie Evidence.**

Art. 3233, Rev. Stat., provides: "That the order made declaring the result (of a local option election) shall be prima facie evidence that all the provisions of the law have been complied with in giving notices of, and in holding said election, and of the counting and return of the votes and declaring the result thereof." Held: That it is not necessary, in said order, to state that proper notices for the election had been given.

**5. Same—Need not Contain Statutory Exceptions.**

An order declaring the result of a local option election, will not become nugatory by failing to stipulate all the exception provisos in Art. 3228, Rev. Stat., prescribing the manner and terms under which intoxicants may be sold in a local option precinct.

6. Local Option—What Constitutes a Sale—Executory Contract.

On a trial for violation of local option, where it appeared that the beer was shipped from a local option district to a party outside said district, upon a contract in which it was expressly stipulated that it was to remain the property of the seller until its delivery to the purchaser at the place of delivery. Held: That the contract was an executory one, and not being an executed or complete sale until delivery at the place of destination, the transaction was not a sale in and violation of local option at the place of shipment.

APPEAL from the County Court of Parker. Tried below before Hon. A. J. HOOD, JR., County Judge.

This appeal is from a conviction for a violation of local option, the punishment being assessed at a fine of $25, and twenty days' imprisonment in the county jail.

A motion was made to quash the information, as follows: (1) Because it fails to allege that a petition such as is required by law before an election can be ordered, was presented to the Commissioners' Court, and that the Commissioners' Court ordered an election. (2) Because it fails to allege that an order of the Commissioners' Court had been made authorizing and ordering an election. (3) Because it fails to allege that the order of court declaring the result had been published for four successive weeks in some newspaper published in the county where said election had been held. (4) Because it fails to allege the fact of publication had been entered by the County Judge on the minutes of the Commissioners' Court. (5) Because it fails to allege that local option was then and there in effect, or to allege facts sufficient to show that local option was then and there in effect. (6) Because it fails to allege the sale was made with the purpose of evading the provision of law relative to local option. (7) Because it charges no offense known to the laws of this State. This motion was overruled.

The case is sufficiently stated in the opinion.

*Harry W. Kuteman*, for appellant.—In support of his proposition, that the court erred in overruling his motion to quash the information, his contention was, that in this class of cases, and in the construction of this law, the strictest rule should be applied, citing the articles of the Revised Statute, 3132, 3227, 3229, and Ex parte Sublett, 23 Tex. Crim. App., 310; Stallworth v. State, 18 Tex. Crim. App., 378; Boone v. State, 10 Tex. Crim. App., 418; Prather v. State, 12 Tex. Crim. App., 401; Akin v. State, 14 Tex. Crim. App., 142; Donalson v. State, 15 Tex. Crim. App., 25; McMillan v. State, 18 Tex. Crim. App., 375; Ex parte Kramer, 19 Tex. Crim. App., 124; Smith v. State, 19 Tex. Crim. App., 444.

Under the third assignment of error, we submit the court erred in admitting in evidence the order declaring the result of the election, and said order was wholly insufficient, because it does not describe the prohibited territory by metes and bounds. A justice precinct is a subdivision of a county, and its boundaries should be described as required by Article 3227 of the local option act. See, Irish v. State, 34 Tex. Crim. Rep., 130.

Under the sixth assignment of error, we submit the proof wholly fails to show that any intoxicating liquor was sold by defendant to F. Matney, in Parker County, but, on the contrary, shows the sale was made in Palo Pinto County.

In determining when a sale is completed, and when the title to the property rests in the purchaser, the evident intention of the parties will govern. Cunningham v. Ashbrook, 20 Mo., 553; England v. Maitland, 3 Mo. App., 490; Fletcher v. Ingram, 46 Wis., 191; Bonn v. Haire, 40 Mich., 404; 9 Minn., 142; Lester v. East, 49 Ind., 558; Callahan v. Myers, 89 Ill., 570; First Nat. Bank v. Reno, 73 Iowa, 145; Terry v. Wheeler, 25 N. Y., 525; Morse v. Sherman, 106 Mass., 430.

By the express terms of this contract the title to the beer was to remain in appellant until it was received and accepted by Matney.

The true test of when the title passes to the purchaser is who would be the loser in the event of destruction by fire, or otherwise. Wood v. Half, 44 Texas, 633; 1 Vol. White and Willson, Sec. 78.

A case directly in point is that of Wilson v. Stratton, 47 Me., 120. In that case, the contract between the parties provided that after the goods were delivered to the purchaser, he need not accept them nor pay for them unless they suited him.

The court decided the sale was not completed until the purchaser received and accepted the goods, and therefore the sale took place at the point where the goods where the purchaser received the goods. In the case of Suit v. Woodhall, 113 Mass, 391, the contract was made in the prohibited locality, and the court construing it, held, if it appeared from the terms of the contract that the goods were to remain the property of the seller while in transit, the sale was only completed where the goods were received by the purchaser.

In Dunn v. State of Georgia, 3 Lawyers' Rep., 199, the court applies the test as to who would be the loser of the whiskey had it been lost in transit. The same case admits the proposition that, if the parties agreed the goods were to be delivered by the purchaser at a certain place, then the sale was not complete until then. We also call attention to the footnote of said case, showing, if the title was to remain in the seller during transit, then the loss during transit would fall on him.

The title to the property does not pass until the parties by their contract stipulated it should. Cleaves v. Washburn (Me.), 5 New Eng. Rep., 788; Benj. on Sales, 239. The question of when the title passes is dependent on the terms of the contract and the intent of the parties. 115 Pa., 452; 19 W. N. C., 250.

It is competent for the parties to determine by their contract what act should be done by the vendor or vendee before the title shall vest in the purchaser. Malone v. Minn. Stone Co., 36 Minn., 325. The sale is not complete until the seller acquires a right to the purchase money, and if the contract stipulates the title is not to pass until received by the purchaser, and that the purchaser is not to become liable until he examines and receives it, then the sale is not complete until that takes place.

Pearson v. State of Mississippi, 4 Lawyers' Rep., 835. Where an order was sent from a non-license town to defendant, who was doing business in another town, to deliver beer generally no title passes to the purchaser, then the title would not pass to the purchaser until the goods were absolutely delivered. State v. Basseman, 2 New Eng. Rep., 828, and 54 Conn., 88.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—This appeal is prosecuted from a conviction for a violation of the local option law in Precinct No. 1, of Parker County. Several objections were urged to the information because of supposed defects. These exceptions have no merit. The information is in the usual form, such as has been invariably approved by this court. Several objections were urged to the introduction of the minutes of the Commissioners' Court, showing the order of said court directing the election for local option for said Precinct No. 1. One of the grounds of objection to said testimony is that it was apparent from the face of said order that it had been interlined, and the following words inserted, to-wit: "Except wines for sacramental purposes, and alcoholic stimulants as medicine in case of actual sickness, as provided by law." In this connection the County Judge was introduced, and testified with reference to this interlineation that after said order had been prepared he examined the minutes, and thought they were not sufficient, and instructed the County Clerk to make the said interlineation. He was unable to state whether it was made on the same day on which the order was entered or not, but that it was so made before the Commissioners' Court adjourned for the term, and that the interlineation was made by the clerk under his direction. He did not recollect whether the court was actually in session at the time he caused the addition to be made, but was satisfied that the minutes were read to the Commissioners' Court before its final adjournment, and were approved after the addition. Under this state of case, we do not think the objection of appellant well taken. The County Judge was the presiding officer of that court, and whether the addition was made with the consent of the Commissioners' Court at the time it was made under the case stated is immaterial. Their intention was to order the election, and to make a complete order for that purpose, and whether they were present when the order was made complete by the County Judge or not is not material, because the minutes were approved by them at the end of the term, with knowledge on their part that said order had been completed. A court has authority to correct or amend its judgments and orders at any time during the term of court at which said orders were made and entered. It was objected that the order of the court declaring the result of prohibition in said precinct did not describe the prohibited territory by metes and bounds, because there was nothing to show that proper advertisements of said order of election had been made as required by law, or that notices of such election had been

posted; and because said order is incomplete, in that it fails to contain all of the provisos and conditions set out in Article 3228, as contained in the amended local option law of the Act of 1893. This election was ordered for Justice Precinct No. 1, and it was, therefore, not necessary to set out the metes and bounds in any of the orders of the court, in regard to the territory; nor was it necessary to the validity of the order declaring the result of said election in said precinct that it should recite that notices were duly posted. Under Article 3233 (Acts 23rd Leg., p. 49), the special session of the Commissioners' Court, which is held for the purpose of opening the polls and counting the votes, and declaring the result of said election, provides "that the order made declaring the result shall be prima facie evidence that all of the provisions of the law have been complied with in giving notices of and in holding said election; and of the counting and return of the votes, and declaring the result thereof." It is, therefore, not necessary to state in said order that proper notices had been given. If it be admitted that the order fails to stipulate all of the exception provisos in Article 3228, prescribing the manner and terms under which the intoxicants may be sold in the local option precinct, still this would not affect the order. These matters are the statutory enactment, and, whether stipulated in the order of the court or not, the order will not be rendered nugatory because of a failure to insert them. This question is not a novel one in this State. Appellant also objected to the introduction of this same entry of the order declaring the result of said election, as published by the County Judge in a specific newspaper, "because there was no allegation in the indictment that such entry had been made." This same ground was urged by the appellant in another form, to-wit: in his exceptions to the indictment. We have held the indictment good, and have always held this form of indictment good, and sufficiently specific. That being correct, the objection to the introduction of this testimony falls to the ground.

It appears from the record in this case that M. T. Bruce, the appellant, owned a house in Weatherford, in which he stored beer and ice. After the passage of local option in Precinct No. 1 of Parker County, in which Weatherford is situated, he shipped or caused to be shipped from said beer and ice storage house a keg of beer to one Matney, at Gordon, Palo Pinto County, where local option did not prevail. The price for said beer was $2 per keg, and 40 cents expressage, which the purchaser, Matney, agreed to pay. The State only proved a naked transaction of shipping the beer by the appellant from Weatherford to the purchaser, Matney, at Gordon, and the details of the contract were proven by the witness, Matney, and the defendant, Bruce. Bruce says that Matney had been an old customer of his for ice, and that he desired to secure him as a beer customer; that he saw him, and made a contract with him to sell him beer, between the 2nd and 10th of August, while he was in Gordon on business. He states that he told him that he had no beer to sell in Weatherford; that he could not sell him beer in Weatherford, and that any sale he made must be a sale in Dallas, and all of

the transactions must be kept there; that Matney wanted the beer sent to him out of the ice house at Weatherford, in order that it might be kept cool, and he told Matney that he would do that, and that he would keep twenty-five kegs of beer there for him, and it would be shipped to him as he directed; that it was expressly agreed that the beer was to be appellant's until it was delivered to Matney in his store at Gordon; and that if it soured, or was lost, or in any way destroyed, or lost while in transit, or at any time before it was received, the loss was to fall on the appellant; that the regular price of his beer was $2.40 per keg, and he agreed to let Matney have the beer at $2 if said Matney would pay 40 cents express charges, but, if the beer was not received by him for any reason, he would refund the express charges; and that Matney was to pay for his beer in Dallas; and that he kept an open account in Dallas, and charged Matney with the beer there, and he remitted his payments to Dallas. He further stated that Weatherford is a common railroad point, and he could ship a car load of beer and ice from St. Louis to Weatherford as cheap as he could to Dallas, and could there keep it cool, and ship it from there to customers who were nearer than Dallas, and at a cheaper rate, because the distance was not so great. On this statement the question presents itself in this case, was this a sale in Weatherford or at Gordon? In determining whether or not the transaction is an executed sale, it appears to be considered such if in the transaction the buyer has not only the right of possession, but all the rights and risks of ownership as well. Any loss occurring must fall on him, and the property is liable to be taken for the satisfaction of debts or other claims against him. On the other hand, if the sale is merely executory, the property in the goods does not pass, but remains in the original owner, whose agent the bailee or transferee becomes. And in considering whether the transaction is a sale or not the intention of the parties, when ascertained, has a controlling influence. See 21 Amer. and Eng. Ency. of Law, p. 512, Subdiv. 4, and authorities cited in notes. This very question of a sale of liquor as to where the sale was executed in regard to violations of the local option laws has frequently been before the courts. In Black on Intoxicating Liquors it is said: "It frequently becomes important to localize a sale of liquors, in order to determine whether the transaction must be regarded as taking place in a foreign state where it would be lawful, or in the State of the forum where it would be illegal. Many elements may enter into the determination of this question, but those most important to be considered are the place where the order was given, the place where delivery is made, and the character of the sale as final or conditional." Black, Intox. Liq., § 267. We understand that the weight of authorities hold that if goods, such as liquors, are ordered to be shipped from one point to a buyer at another, C. O. D., by a common carrier, the sale is considered as completed at the point of shipment. See, State v. Carl, 43 Ark., 354; Tegler v. Shipman, 33 Iowa, 194; Garland v. Lane, 46 N. H., 246; Hill v. Spear, 50 N. H., 253; Garbracht v. Com., 96 Pa. St., 449; Pilgreen v. State, 71 Ala., 368; Sarbecker v.

State, 65 Wis., 171; 26 N. W., 541; Shuenfeldt v. Junkermann, 20 Fed., 357. In some States, however, a different rule prevails. See, Wilson v. Stratton, 47 Me., 120; State v. O'Neil, 58 Vt., 140; 2 Atl., 586; Judge Treat's opinion in U. S. v. Shriver (U. S. Dist. Ct. Ill.) 23 Fed., 134, quoted in note to State v. Carl, 51 Amer. Rep., 571. According to Black on Intoxicating Liquors, "it is also generally held that where a person living or doing business in one State sends his agent into another State to solicit orders for goods, and the agent there takes orders, and sends them to his principal's place of business, and the latter fills the orders, and without any special arrangement as to the manner and place of delivery, delivers them to a carrier in his own State, to be transported at the expense of the purchaser to the latter's place, the place of sale is in the State where the agent's principal does business. In some of the cases, however, the rule is that the sale is made at the place where the agent takes the order, if the agent's action is final and binding on the principal; but otherwise, if the order is to be subject to the principal's approval before it is filled. A purchaser by sample has the right, independent of any express agreement, to refuse to receive the goods offered, if they fail to correspond with the sample. Hence, where liquors are sold by a wholesale dealer in one State, through his agent, to a party in another State, the fact that such right is reserved to the purchaser, does not change the locality of the contract." See, Black, Intox. Liq., § 269, and authorities there cited. Tested by these rules, it would appear that if there was no special contract between the parties, but a mere order by the purchaser at Gordon to the seller at Weatherford to ship beer to him C. O. D., the sale was completed at Weatherford. But it appears that the parties did more than this. They provided, according to the terms of their contract, that the purchaser should pay the transportation from Weatherford to Gordon, and this circumstance would rather reinforce the idea that the sale was intended to be a completed sale at the point of delivery to the common carrier, to-wit: at Weatherford. But it is insisted by the appellant that because it was stipulated that the goods should remain his during their transportation, and until they were received and approved at Gordon, the contract of sale remained executory. The stipulation in this regard was that if the beer should sour or be lost the seller was to stand the loss, and that the beer was to remain the property of the seller until it should be received by the purchaser at Gordon. This appears to be a stipulation of the contract, and such a stipulation as the parties had a right to make. We cannot make a contract for the parties, or undo one that they may have made, no matter what we may conceive their purpose or intention to have been. Parties who are competent to trade can make their own contracts, stipulate as to terms, and can make such terms as are not illegal. The uncontradicted stipulation in this regard is that the beer in question was to remain the property of the seller until its delivery to the purchaser at Gordon, and the sale consequently was not an executed sale until the delivery of the beer to the purchaser at the latter place,

and, the sale not being a completed sale until the delivery of the beer at Gordon, the transaction was not in violation of the local option law at Weatherford. The judgment of the lower court is accordingly reversed, and the cause remanded.

*Reversed and Remanded.*