### George Golightly v. The State.

No. 3214.   Decided December 6, 1905.

1.—Local Option—Charge of Court—Agency.

On a trial for a violation of the local option law, where there was some evidence that defendant acted as agent of the purchaser and was not representing a liquor house, it was error to refuse the requested charge upon the question of agency.

2.—Same—Place of Sale—Contract—C. O. D. Order.

See opinion for facts for contract for sale of liquors which makes the sale of the same a c.o.d. transaction.

Appeal from the County Court of Cherokee.   Tried below before Hon. R. L. Robinson.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*Perkins & Emanuel,* for appellant.—On question of sale:   James v. State, 9 Texas Ct. Rep., 522; Sinclair v. State, 8 id., 791; Sims v. State, 13 id., 152.

*Howard Martin,* Assistant Attorney-General, and *W. H. Shook,* County Attorney, for the State.—On question of sale:   Northcutt v. State, 35 Texas Crim. Rep., 584; 24 Am. and Eng. Enc. Law, 1050.

DAVIDSON, PRESIDING JUDGE.—This is a local option conviction. The State's case is predicated upon the evidence of the alleged purchaser, Garner. By him it was substantially shown that he and appellant were at the depot at Ponta, Cherokee County, November, 1904. He asked appellant if he had any order blanks for whisky. Appellant replied, he thought so, and told witness to look in his (appellant's) grip, just inside the depot, and see if he could find any. Witness looked, and found an order, brought it to appellant, and asked him to fill it out. Appellant asked him what kind of whisky he wanted, and how much he wanted to pay for it. He was told by witness that he wanted whisky that would cost $3.50 and $4, and the kind. This order blank contained a list of the kinds and prices of whisky. It was filled out and witness signed it by his mark, being unable to write. He informed appellant that he did not have the money then to pay for it, and was told that it was all right; that it would be sent C. O. D. and he would not have to pay for it until it came; and that he would not have to take it out, unless he wanted to. It was understood between them that the whisky was to be shipped C. O. D. at Ponta, Cherokee County, and was not to be the whisky of witness until paid for. Witness testified that he would not have to pay for it if it had been lost. In a few days he received the C. O. D. package of whisky at Ponta. He further testified that appellant did not tell him he was working for any saloon in Texas; did not come to him and ask him to order any whisky; but witness went to appellant, called him to fill out the order, and the reason assigned for doing this was because he could neither read nor write. Witness said he heard that appellant was working for a saloon, but that appellant did not tell him so. Witness took the order and mailed it himself, and paid the express charges on the whisky.

The State then introduced Woodall, who testified that appellant had been working for a liquor house, at Athens, and had induced Woodall to go into the employment of said liquor house. Through this witness the State introduced a C. O. D. order blank on John Hogan & Co., at Athens, Texas, which is in the usual form of C. O. D. order blanks. It provides, among other things, as follows: "We will ship goods C. O. D. to points that have express offices. Where there is no express office, money must accompany the order." And further, "We pay express charges on orders amounting to one gallon or more, if not over one hundred miles."

There are several questions presented for review, more or less important, but we will not discuss all of them. One of the issues raised by this testimony is, was appellant in this transaction representing some liquor house, in taking the order, or was he the agent of Garner in filling out the order for Garner to send to some house. Appellant asked a charge to the effect that if he was representing Garner in making out the order, and assisted him in making the order, and not representing the liquor house, he would not be guilty, even if the sale

occurred in Cherokee County. We think this charge should have been given. It will be observed that the State fails to prove, except inferentially through witness Woodall that appellant had ever represented any liquor house. The evidence in this connection fails to show positively that at the time the order was taken he was in the employ of John Hogan & Company, or any other liquor house. Appellant is entitled to the doubt on the testimony.

But a more serious question arises, that is, the contention that the sale was in Cherokee County. If appellant was representing a liquor house, and had taken a C. O. D. order, after the conversation between himself and Garner, the instrument in writing formed or would constitute the contract. The terms of this instrument could not be changed by previous conversation or oral testimony, unless for fraud or mistake. As we understand the facts, the order introduced in evidence, even if appellant was representing John Hogan & Co., was of that character which constituted a sale at the point of shipment and not at the point of destination. Sims v. State, 13 Texas Ct. Rep., 152; Keller v. State, 13 Texas Ct. Rep., 264, and other authorities bearing on this question too numerous to mention. Wright's case decided at present term.

We do not believe this case comes within the rule laid down in Bogle v. State, 42 Texas Crim. Rep., 389, as contended by the State. That was not a C. O. D. shipment, and the contract was of a different character. In that case there was no written contract putting the final consummation of the trade into writing, and it was proved by oral testimony, and this showed the property was to remain the property of Bogle, or the house that employed him, until it reached Greenville, from Dallas. In other words, that the title to the property did not pass until it reached Greenville. In C. O. D. shipments the money is not usually paid until the property reached the point of destination: the shipper retaining a lien on the goods shipped. The fact that the purchaser said he would not pay for whisky or goods shipped C. O. D. would not relieve him from the legal obligation to pay for it, if the title had passed at the point of shipment. That may be the idea of witness, but the law is the other way, and he would be forced to pay if the shipment was C. O. D., whether he intended to do so or not. It is not a question of his individual intention, it is a question of liability arising under the contract, and intent therein expressed, and in a suit in the civil courts he would be compelled to pay, whether he received it or not. His remedy in case of loss would be against the express company, for failing to deliver. The shipper would have the right to force payment of the goods from the consignee, and even if the express company should deliver the goods without receiving the money, the shipper would have his remedy against the express company or against the consignee for the value of the goods delivered without payment. We believe this to be an ordinary C. O. D. transaction, and comes

within the rule laid down under the unbroken line of decisions in this State, commencing with Bruce v. State, 36 Texas Crim. Rep., 53.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, dissents on the C. O. D. question.