### AMERICAN RY. EXPRESS CO. v. VOELKEL. (No. 8606.)*

(Court of Civil Appeals of Texas. Dallas. Dec. 10, 1921. Rehearing Denied Jan. 14, 1922.)

1. Sales ⬯202(6) — Delivery of property to carrier for C. O. D. shipment vests title in buyer.

On delivery of property by the seller to an express company for C. O. D. shipment consigned to the buyer who had contracted to purchase, title passes to the buyer.

2. Sales ⬯318 — Acquiescence by shipper in delivery of C. O. D. shipment without payment election to treat as consummated sale.

Where delivery of property was made to an express company for C. O. D. shipment to the buyer, but delivered without demand of C. O. D. payment, knowledge, by the shipper, of delivery and failure to rescind or take steps to recover the property, was acquiescence in delivery and election to treat as a consummated sale passing title, and there remained with the shipper only the right to sue for the purchase price.

3. Assignments ⬯94 — Assignment of claim against purchaser of goods shipped C. O. D. conveyed only shipper's remedies.

Where property was delivered for C. O. D. shipment, but delivered without demand for C.

O. D. payment and receipted for by an agent of the purchaser, and the evidence showed that the shipper did not make any claim against the agent for the property or its value, assignment of the shipper's claim to the express company passed only the right to sue the purchaser for the contract price, or the agent, on the theory that he was an undisclosed principal.

4. Appeal and error ⬯931(3)—Evidence and findings presumed in support of judgment where none filed.

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1989, 1990, 1991, in the absence of findings of fact and conclusions of law, it must be presumed that the court determined the issues from evidence sufficient to support the judgment rendered.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Action by the American Railway Express Company against L. C. Voelkel. Judgment for defendant, and plaintiff appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Head, Dillard, Smith, Maxey & Head, and J. F. Holt, all of Sherman, for appellant.

H. L. Davis, of McKinney, for appellee.

VAUGHAN. J. Appellant (plaintiff in trial court) filed its suit on August 19, 1920, in which it pleaded that defendant, appellee herein, purchased through Thomas Gavin on August 25, 1919, from the Continental Supply Company, certain machinery, consisting of one Lucy Special flat top rotary, with fixtures f. o. b. Houston, Tex., for sum of $1,080, which was its value at f. o. b. Houston, Tex., for shipment to Burkburnett, Tex., and said supply company delivered all of said machinery to defendant, and that defendant duly accepted same, and refused to pay for same, or any part thereof, to plaintiff's damage in sum of $1,080. That said machinery was shipped C. O. D. $1,080, but through some error of some employee of plaintiff said machinery was delivered to defendant without the collection of said sum, and neither said Gavin nor defendant have paid said sum, and by reason of said unauthorized delivery the plaintiff had to pay to said supply company the purchase price $1,080, and plaintiff took an assignment from said supply company of all causes of action against defendant or any other person, or persons.

It was further alleged that defendant in making said purchase used the name of said Gavin, or that Gavin ordered or bought for defendant, and Gavin and defendant were acting together, and defendant received said machinery by executing the name of Gavin to the receipt therefor, but with the consent of Gavin, and converted same to his own use and benefit.

Appellee (defendant in court below) denied

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted March 15, 1922.

that he had bought said machinery from said supply company, but alleged he pur-chased same from Thomas Gavin, who was acting for the Katy Oil Company, and that he thereafter paid the Katy Oil Company, for same, and he did not know that Gavin or the Katy Oil Company had not paid or made satisfactory arrangement for the pay-ment of same. That the property was ex-pressed to Gavin, and defendant at the re-quest of Gavin receipted for same and took possession of same without any knowledge that the property was shipped C. O. D.

At the trial before the court, without in-tervention of a jury, evidence was adduced tending to prove the following facts: In June, 1919, Thomas Gavin contracted to buy from the supply company one complete drilling outfit to be delivered by August 15, 1919, upon terms of one-third cash, balance on time to be evidenced by notes. Gavin furnished the supply company with lists cov-ering size, weight, and amount of machinery he would need, and requested that he be notified when shipment was ready, advising that he would be down to Houston for Gavin, and on August 20th wired him that the ma-chinery was ready for shipment, to which Gavin replied by wire that he would in a couple of days come to Houston with a prac-tical man and check the material. On Au-gust 25th the supply company received a tele-gram from Gavin, saying in part:

"Ship rotary belonging to new outfit by ex-press today, sure, to Burkburnett. Will be down to receive balance of the rig in a day or so."

The supply company immediately shipped out the rotary and fittings by express, con-signed to Thomas Gavin, receiving from the express company (plaintiff) a nonnegotiable receipt, showing the shipment was consigned to Gavin C. O. D. $1,080, and on August 26th wired Gavin that the shipment was made the night before, and urging that it had guaranteed he (Gavin) would have men there to unload it, otherwise express company would not accept the shipment. This tele-gram was confirmed by letter, but neither the telegram nor letter stated the shipment was C. O. D.

That appellee and his partner, D. H. Den-nis, commenced to drill in the Burkburnett field a well for the Katy Oil Company about July 15, 1919, and that appellee also, individ-ually was drilling a well for the Diamond D. Oil Company close by. That Gavin was a di-rector and manager of the Katy Oil Com-pany. That the rotary appellee was using in drilling well for the Diamond D. Oil Com-pany broke down, and learning that Gavin had contracted for a drilling rig for the Katy Oil Company, appellee applied to Mr. Gavin to purchase a rotary, a part of the rig, and Mr Gavin agreed to sell it to him, and ap-pellee told him to order it out, and he would take it off his hands, and Gavin agreed to do so, and agreed to sell it to appellee when it arrived. That he bought the rotary from Gavin, and was to pay for it. That Gavin was acting for the Katy Oil Company. That Gavin told him he had bought a drilling rig outfit from a supply house at Houston, but did not tell appellee which one. That ap-pellee agreed to give Gavin for the rotary whatever it cost him at the factory or the supply company. That Gavin did not know what it would be until he got his bill. Ga-vin afterwards informed appellee that it was $1,080. At one time there was some kind of an understanding that appellee would take the whole outfit from Gavin, but this was not carried out. When the rotary arrived Gavin authorized appellee to go and get it. That he signed for it. That he signed Ga-vin's name to the receipt. Gavin authorized him to do so. He received the machinery, and used it in drilling the well. When he receipted for the machinery the express com-pany did not demand payment of the $1,080. Appellee did not know at the time it was shipped C. O. D. That at the time he did not know or have any notice from the ex-press company that the supply company would claim anything against him for the machine. About seven months afterward appellee first learned that it was shipped C. O. D., when an agent of the express company called on him at McKinney to find out some-thing about it. About two weeks after he received the machine, under an agreement between the parties, he credited the Katy Oil Company with $1,080 on the account said company was due him.

That on September 3d, after defendant had received the rotary at Burkburnett, the sup-ply company wrote Gavin that balance of rig was ready for shipment, to which Gavin replied on September 22d:

"Sorry party did not take rotary, wish you would send your bill by wire before we make settlement with them for rotary you expressed to Burkburnett."

The supply company wired back:

"Price on rotary $1,080 as per invoice attach-ed to C. O. D. papers."

On November 8, 1919, the supply company filed a claim against the appellant for $1,-080, the C. O. D. amount representing in-voice price of rotary. On March 16, 1920, appellant paid the claim, to wit, $1,080 to the supply company, and on June 30, 1920, took an assignment from the supply com-pany, conveying all right, claim, and account whatsoever which it has or may have against Thomas Gavin, L. C. Voelkel, or any person, or persons, growing out of a sale and ship-ment by said Continental Supply Company, from Houston, Tex., consigned to Thomas Gavin at Burkburnett, Tex., etc. Appellant

afterwards, on August 19, 1920, filed this suit against appellee.

This appeal is before us without conclusions of law and fact. Therefore we are not advised as to the deductions made by the trial court from the evidence contained in the statement of facts constituting a part of the record in this cause, nor what was specifically acted upon in reaching the conclusion as reflected by the judgment before us for review. This condition of the record has required a careful examination of the statement of facts to determine whether or not sufficient evidence was before the trial court on which to sustain the judgment rendered, or on which said court, by any process of reasoning, could have reached the conclusion resulting in the disposition of the cause challenged by appellant as not being in accord with the established rules of law.

[1] When the Continental Supply Company delivered the machinery to appellant at Houston, Tex., for C. O. D. shipment to Burkburnett, Tex., consigned to Thomas Gavin, who had previously contracted for the purchase of same, all title theretofore vested in said Supply Company passed to Thomas Gavin. Reed v. Am. Express Co., 127 S. W. 901; Cox v. Early, Foster & Co., 143 S. W. 346; Robinson & Martin v. H. & T. C. Ry. Co., 105 Tex. 185, 146 S. W. 537; Norfolk S. Rly. Co. v. Barnes, 104 N. C. 25, 10 S. E. 83, 5 L. R. A. 611; Texas Seed & Floral Co. v. Schnoutze, 209 S. W. 495; Keller v. State, 87 S. W. 673, 1 L. R. A. (N. S,) 489; Golightly v. State, 49 Tex. Cr. R. 44, 90 S. W. 26, 2 L. R. A. (N. S.) 383, 122 Am. St. Rep. 779, 13 Ann. Cas. 827.

To illustrate the application of the rule, we deem it only necessary to quote from the opinion rendered by Chief Justice Brown in the case of Robinson & Martin v. Railway Co., supra:

"When the Erie City Iron Works sold * * * to Robinson & Martin and delivered * * * to the railroad company at Houston, the title vested in the purchasers; neither payment of the price nor actual delivery to purchaser was necessary to pass the title. * * * It is true that Robinson & Martin could not have taken possession of the boiler, without consent of seller, until the price was paid, which right of possession by the iron works was asserted and protected by making the delivery conditioned upon payment of the price."

The fact that the property was shipped C. O. D. will not change the rule, as such shipment does not retain title to the property; same being only the means whereby the shipper reserved the jus disponendi to prevent the property from actually passing into the possession of the purchaser until the contract price has been paid. Second National Bank of Columbia v. Cummings et al., 89 Tenn. 609, 18 S. W. 115, 24 Am. St. Rep. 618; Dows v. Bank, 91 U. S. 631, 23 L. Ed. 214.

The above doctrine is recognized and adhered to in Texas Seed & Floral Co. v. Schnoutz, supra.

[2] The machinery was delivered to appellant for transportation on the 25th day of August, 1919, under C. O. D. shipment to be transported to Burkburnett, Tex., and there delivered to Gavin on the payment of $1,080 and transportation charges. On the 27th day of August, 1919, the machinery was delivered to appellee, who signed Gavin's name to an instrument denominated a delivery sheet. The agent representing appellant only demanded the payment of transportation charges. On the 22d day of September, 1919, Gavin wired the Continental Supply Company, as follows:

"Just got back. Received your letter. Sorry party did not take rotary. Wish you would send your bill by wire before we make settlement with them for rotary you expressed to Burkburnett."

On September 23, 1919, the Continental Supply Company wired Gavin, as follows: "Price on rotary $1,080 as per invoice attached to C. O. D. papers." On November 8, 1919, the Continental Supply Company filed claim for $1,080 against appellant, being the C. O. D. which it failed to collect when the machinery was delivered. This claim was paid in full by appellant to the supply company on March 16, 1920. The supply company, on June 30, 1920, assigned to appellant its rights and claim and account against Gavin and appellee. The supply company must have known that delivery of the machinery had been made by appellant without collecting the $1,080, for a month had intervened from the date of delivery of the machinery before it sent its bill to Gavin for payment, during which time the supply company took no steps to rescind the trade or recover the machinery.

The supply company, under the above facts, acquiesced in the delivery of said machinery by appellant, electing thereby to treat it as a consummated sale passing title, waived its rights, if any it had, to rescind the sale and recover the property or to maintain a suit for damages against appellee on account of conversion of such property as against any lien theretofore existing, if any, in favor of the supply company to secure the payment of the price contracted to be paid by Gavin, and there only remained with the supply company the right to sue the buyer for the purchase price. Pittsburg Plate Glass Co. v. Roquemore et al., 88 S. W. 449; Frech v. Lewis, 218 Pa. 141, 67 Atl. 45, 11 L. R. A. (N. S.) 948–950, 120 Am. St. Rep. 864, 11 Ann. Cas. 545. The opinion in the latter case being peculiarly applicable to the facts in the instant case, we are constrained to quote approvingly the following portion thereof:

"The settled doctrine of our cases is to the effect that, where the contract of sale provides for payment of the purchase price on delivery of the articles sold, and the seller delivers the goods, but the buyer fails to pay, the right of property does not pass to the buyer with the possession, but remains with the seller, who may at his option reclaim the goods. In some jurisdictions the right of property is held to pass with the delivery, unless at the time the right to retake is expressly declared by the seller. We have not gone so far. Our cases proceed on the theory that until payment has been made, or waived, the contract remains executory; and that delivery in such case is not a completion of the contract, except as an intention to so regard it is expressly declared or can fairly be inferred from the circumstances attending. Possession, however, having passed, and the buyer, by the act of the seller, having been invested with the indicia of ownership, the policy of our law requires that this situation—the possession in one and the right of property in another—shall continue no longer than is necessary to enable the seller to recover the goods with which he has parted. The law gives the seller the right, in such case, to reclaim his goods; but he must do so promptly, otherwise he will be held to have waived his right, and can only thereafter look to the buyer for the price. The question the present case suggests is—When does this inference of waiver arise? Our authorities admit of but one answer: Except when delayed by trick or artifice, the assertion of the right to reclaim the property must follow immediately upon the buyer's default. This does not mean that the seller must eo instanti begin legal proceedings to recover the goods; but it does mean that the seller, when he discovers that his delivery is not followed by payment, as he had the right to expect, is at once put to his election whether he will waive the condition as to payment and allow the delivery to become absolute, or retake property; and that he is to allow no unnecessary delay in making his choice. The object of the law is not to multiply his remedies because of his disappointment. He may not continue to hold his right to the goods, and at the same time hold the buyer as his creditor. One or the other he must relinquish, and do it promptly, or the law will forfeit his right to elect. Continued acquiescence in the buyer's possession of the goods will be taken as a choice on his part to regard the delivery as absolute, nothwithstanding the buyer's default. The policy of the law, in requiring promptitude in the assertion of continued ownership of the goods, could easily be vindicated were it necessary. It answers every purpose here to show that the law requires it."

[3] There is no evidence that the supply company ever, at any time, sought to recover the property in question from Gavin or appellee or asserted the existence of any lien against same to secure the payment of the purchase price. In fact, the evidence shows, affirmatively, that the supply company did not make any claim against appellee for the property or its value or otherwise, and appellee did not know for about seven months after he received the property and settled with the Katy Oil Company for it that it was shipped C. O. D., and that it had not been paid for.

Therefore the assignment executed by the Continental Supply Company to appellant, viz.:

"That the Continental Supply Company is a corporation acting by its duly authorized officer and agent in consideration of the sum of $1,080 to it in hand paid by the American Railway Express Company a corporation, the receipt of which is hereby acknowledged, has this day granted, bargained, consigned and conveyed unto the said American Railway Express Company all right, claim and account, whatsoever which it has, or may have, against Thomas Gavin, L. C. Voelkel, or any other person, or persons, whomsoever, drawing out a sale and shipment by the said Continental Supply Company from Houston, Texas, consigned to Thomas Gavin at Burkburnett, Texas, under date of August 25, 1919, of one flat top rotary, eight slips for same and two boxes of fittings, to have and to hold the same, without recourse. In witness thereof said the Continental Supply Company has caused this instrument to be executed by its vice president and its corporate seal to be affixed this the 30th day of June, 1920"

—did not pass any right, title, or interest to appellant in the property sold and shipped C. O. D. by the Continental Supply Company to Gavin. The only rights and remedies passed by said assignment were (1) to sue Gavin as a purchaser for the contract price, or (2) to sue appellee for the contract price on the theory that he was the undisclosed principal. Reed v. Am. Ex. Co., 127 S. W. 901.

[4] We, therefore, conclude that the only issue properly presented by the pleadings and raised by the evidence for the trial court to determine in order to reach the conclusion reflected by the judgment appealed from was whether or not appellee was, in fact, the purchaser, being the undisclosed principal in the transaction involving the shipment of the rotary. However, if we should be in error as to this and the other issue made by the pleadings, to wit, that appellee was liable for the value of the property on account of its conversion by reason of the fact there existed at the time he acquired possession of same, a valid lien in favor of the supply company to secure the payment of the contract price as against Gavin, and that the supply company duly transferred and assigned such claim to appellant, was also before the court with evidence in support of same which would have justified a finding in favor of appellant on such issue, yet we are compelled to find that the trial court determined both issues against appellant from evidence sufficient to support the judgment rendered, especially in the absence of findings of fact and conclusions of law. Vernon's Sayles' Texas Civil Statutes, arts. 1989, 1990, and 1991; Reed v. Brewer, 90 Tex.

144, 37 S. W. 418 (from which we quote as follows: "Findings of fact and conclusions of law were not filed by the trial court. In this condition of the record, it must be presumed, in support of the judgment, that the court found every fact, fairly deducible from the evidence, necessary to its rendition"); Woldert v. Pukli, 221 S. W. 1112; Fitzhugh v. Land Co., 81 Tex. 314, 16 S. W. 1078; Crow v. Cattlemen's Trust Co., 198 S. W. 1047; Coker v. Mott, 190 S. W. 747; Naylor & Jones et al. v. Foster et al., 44 Tex. Civ. App. 599, 99 S. W. 114; Vasser et al. v. City of Liberty et al., 50 Tex. Civ. App. 111, 110 S. W. 119; and John W. Harris et al. v. Monroe Cattle Co. et al., 84 Tex. 674, 19 S. W. 869 (from which we quote as follows: "Where the cause was tried before the judge and there are no conclusions of fact and of law filed, if the statement of facts supports the judgment upon any combination of facts therein, on appeal errors upon other branches of the case are no grounds for reversal. The judgment will be sustained if it can be").

We have searched the statement of facts carefully, and have not been able to bring ourselves to the conclusion that the trial court did not have sufficient evidence to deduce therefrom the facts necessary to support the judgment rendered. Therefore, conceding that the interpretation placed upon the evidence by the trial court would not find favor with this court as an original proposition, that would not justify the violation of the plain terms of the law in order to reach a result in keeping with our comprehension of the facts.

What we have said necessarily results in the overruling of appellant's assignments of error and the affirmance of the judgment of the court below.

Affirmed.