O'BEAR-NESTER GLASS COMPANY v. ANTIEXPLO COMPANY ET AL.

No. 1808. Decided March 18, 1908.

1.—Corporation—Stockholders Liability—Constitution.

The prohibition against the issue of stock by a corporation except for money paid, labor done, "or property actually" received requires that the assets for which stock is exchanged should be something substantial and of such a character that they could be subjected to the payment of claims against the corporation and to secure stockholders in their rights. (P. 435.)

2.—Same—Property Received.

An unpatented secret formula for making "a compound to be mixed with gasoline, kerosene and other oils to prevent explosion" though valuable to a corporation created to manufacture it and which exchanged its stock for such secret formula in good faith, was not "property actually received" by the corporation; the discoverers having only a qualified right in it, and neither they nor the corporation being entitled to protection against its use by any person acquiring the secret without unlawful means, it could not be sold nor subjected to payment of debts of the corporation; the stock exchanged for it was not paid up, and the stockholders receiving same were responsible to creditors of the corporation for the face value of their shares. (P. 436.)

Error to the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

The Glass Co. sued the Antiexplo Co. and others, its stockholders, and appealed from a judgment by which it recovered against the company only. This being affirmed appellant obtained writ of error.

Appellees Sanger and Edwards were purchasers of the stock offered for sale by the company, buying at less than the face value. McClintock subscribed for and received stock, giving his note, which was still unpaid.

*Jno. W. Davis* and *Geo. M. Shelton,* for plaintiff in error.— One to whom the formula and right to manufacture an unpatented, though secret, preparation has been sold by the discoverer can not maintain an action for damages against another to whom the discoverer has subsequently sold the same formula and right, without showing that the defendant, in the acquisition of the formula, has been guilty of a breach of confidence or of contract with the plaintiff, or has acted in fraud of the plaintiff's rights. Chadwick v. Covell, 6 L. R. A., 839; Stewart v. Hook, 63 L. R. A., 255.

A secret process of manufacture, whether it is a proper subject for a patent or not, is so far the property of the inventor, or discoverer that he will be protected by the court against one who, in violation of contract or any breach of confidence, attempts to apply it to his own use or to disclose it to the third person. Peabody v. Norfolk, 98 Mass., 452; Watkins v. Landon, 19 L. R. A., 236.

Article 12, section 6 of the Constitution is this: "No corporation shall issue stock or bonds except for money paid, labor done, or property actually received." It is submitted that the purpose of the Constitution is to protect those who deal with corporations, and that when the Constitution inhibits the issuance of stock except for money paid, it means full value; for labor done, it means labor worth the par value of the stock; or for property received, it means that the property must be of the par value of the stock. This being true, it necessarily follows that when property is received for stock it must be property that can be subjected to debt, and such property as can not be destroyed by the act of the parties. In the case before the court Skimming, one of the stockholders, was the inventor of the formula. There would be nothing to prevent Skimming from disposing of his stock in the corporation and then selling the formula to some other person, whereby it will cease to be a secret; and if such other person, has not dishonestly come into possession of the secret, he can not be enjoined from manufacturing products according to the secret; whereby the whole value of the formula, if it had any, could be destroyed.

The shares of corporate stock can only be issued by a corporation in the first instance at their full face value, and whoever takes original stock in a corporation for less than its face value, is liable to creditors for the difference between amount paid and face value. Constitution, art. 12, sec. 6; Texas Statutes, arts. 684-5 and 6; Cole v. Adams, 49 S. W., 1052; Cole v. Adams, 92 Texas, 171; Nenney et al. v. Waddill, 25 S. W., 308; Mathis

v. Pridham, 1 Texas Civ. App., 58; Stutz v. Handley, 41 Fed. Rep., 531; Sawyer v. Hoag, 17 Wall., 610; Chubb v. Upton, 95 U. S., 665; Hawley v. Upton, 102 U. S., 314; Webster v. Upton, 91 U. S., 67; Upton v. Tribilcock, 91 U. S., 47; Hawkins v. Glenn, 131 U. S., 319; Handley v. Stutz, 139 U. S., 417.

*Prendergast & Williamson* and *Sanford & Denton,* for defendants in error.—The Antiexplo Co., a corporation, having been created for the express "purpose of manufacturing and selling a compound for the prevention of explosions of gasoline, kerosene, and any and all other products of a like nature," had the right and power to purchase from Hamilton, Dennison and Skimming, the owners, the secret and very valuable formula for making said compound, and to pay for the same in its capital stock; and if in the purchase thereof it was not purposely or fraudulently overvalued, then those receiving said stock are not liable to the creditors of said corporation. Const. art. 12, sec. 6; Cole v. Adams, 92 Texas, 171; Coit v. North Carolina Gold, etc., Co., 119 U. S., 343; Same case, 14 Fed. Rep., 12; Bank of Ft. Madison v. Alden, 129 U. S., 372; Hollins v. Brierfield Coal Co., 150 U. S., 383; 1 Cook on Stockholders, secs. 35-46; 2 Thomp. on Corp., secs. 1618, 1619, 1629, 1642; Phelan v. Hazard, 5 Dill., 45; Hospes v. Northwestern Mfg. & Car Co., 50 N. W. Rep., 1117 (48 Minn., 174); Coffin v. Ransdell, 11 N. E., 23; Bickley v. Schlag, 20 Atl., 251; Woolfolk v. January, 33 S. W. Rep., 437; Walburn v. Chenault, 23 Pac., 660; Carr v. LeFevre, 27 Pa. St., 413.

MR. JUSTICE BROWN delivered the opinion of the court.

John Skimming, A. S. Dennison and Sam H. Hamilton owned a secret formula of "a compound to be mixed with gasoline, kerosene and other oils, to prevent explosion" and on the 2d day of January, 1904, the said Skimming, Dennison and Hamilton organized a corporation, the Antiexplo Company, under the laws of the State of Texas, for the purpose of manufacturing and selling the said compound. The capital stock was stated in the charter to be $100,000 and the incorporators sold to the said corporation the formula for making the said compound at the price of one hundred thousand dollars, taking stock therefor as follows: Hamilton, $35,000; Skimming, $35,000; Dennison, $12,500 and $17,500 was left for sale, the proceeds to go into the treasury of the company. The $17,500 in stock was sold to the other defendants herein, but, for the purposes of this opinion, it is unnecessary for us to state in detail the transactions or the amount of stock owned by each. The said Hamilton, Skimming and Dennison believed that the formula which they owned and transferred to the company was worth the sum of one hundred thousand dollars, and all of the parties who bought stock, as well as the incorporators, acted in good faith in the transaction. The corporation was organized and entered upon its business in the city of Waco and was doing a prosperous business when "the fire insurance

companies issued circular letters to all of their policy holders and to all persons who were then handling the product of the said formula, warning them against buying or selling any of the said compound in their business, and threatening that if they did so the companies would cancel the insurance held by said policies, and would not insure them, whereby the business of the said corporation was wrecked and largely ruined."

O'Bear-Nester Glass Company, a creditor of the Antiexplo Company, brought this suit against the company to recover its debt and against the other defendants to recover the difference between the face value of the stock held by them and the value of the payments actually made by them to the company for the stock. A trial was had before the court without a jury and judgment was rendered in favor of the O'Bear-Nester Glass Company against the Antiexplo Company for $1,604.50 and judgment was rendered in favor of all the other defendants against the said O'Bear-Nester Glass Company.

Section 6 of article 12 of our State Constitution is in this language: "No corporation shall issue stock or bonds except for money paid, labor done, or property actually received." The purpose of the convention in enacting that provision of the Constitution was to secure creditors as well as stockholders of corporations against the practice which was too common of corporations issuing fictitious stock and stock upon an insufficient consideration, whereby the actual capital was much less than the amount represented by the shares issued and sold by the corporation. The terms in which this section of the Constitution is expressed indicates the purpose that the assets of the corporation should be something substantial and of such a character that they could be subjected to the payment of claims against the corporation as well as to secure the shareholders in their rights in the capital stock. The question presented for our consideration is, was the secret formula for preparing "a compound to be mixed with gasoline, kerosene and other oils to prevent explosions," property, within the meaning of our Constitution.

It is true that the inventor or discoverer of a secret such as the Antiexplo has a qualified right in it to the extent that he is entitled to maintain the secrecy of his invention and to prevent its disclosure or use by one who obtained knowledge of it through fraud or breach of contract with him. Chadwick v. Covell, 6 L. R. A., 839; 151 Mass., 190.

But it is held in the case just cited that one who acquires information of such secret formula by lawful means may use it and that neither the original discoverer nor any transferee of his can prevent it. In that case the discoverer of the formula, Dr. Spencer, after using it for a number of years, died, and left a request that it should be given to Mrs. Chadwick and the administrator of his estate delivered to her the written recipe and she began the manufacture and sale of the medicine under the name of the original discoverer. Subsequently the administrator *de bonis non* of the estate transferred the secret formula to Covell, who began the

manufacture and sale of the same medicine under the name of the original discoverer. Mrs. Chadwick brought the action to restrain Covell from using the formula, but the court held that the defendant having lawfully gotten possession of the secret was entitled to use it notwithstanding the prior right of the plaintiff.

The qualified property right of the discoverer of an unpatented recipe, or formula, is of such a character that it constitutes no substantial property and could not under any circumstances be subjected to the payment of the debts of the corporation, nor could the shareholders have it sold and the proceeds distributed by process of court. Such unsubstantial and shadowy right when delivered in payment of stock constitutes no payment within the terms of the above quoted section of our Constitution. Van Cleve v. Berkey, 143 Mo., 109; Camden v. Stuart, 144 U. S., 105. In the case last cited the Supreme Court of the United States said: "The experience and good will of the partners, which it is claimed were transferred to the corporation, are of too unsubstantial and shadowy a nature to be capable of pecuniary estimation in this connection. It is not denied that the good will of a business may be the subject of barter and sale as between the parties to it, but in a case of this kind there is no proper basis for ascertaining its value, and the claim is evidently an afterthought." The antiexplo was more unsubstantial and shadowy than the good will of the partnership. Its value was entirely speculative.

If the court should dissolve the corporation it would have no assets to distribute, except such property as it may have acquired in the course of its business, and its assets, the secret formula, would be of such absolutely unsubstantial and shadowy a nature that there could be no application of it to the payment of the debts, or by distribution to the stockholders. If the court should be able to acquire a knowledge of the formula and cause it to be sold, each of the incorporators who possessed a knowledge of the formula could organize a corporation upon the same basis and carry on the business.

The emphatic terms in which the section of our Constitution, above quoted, are expressed, that the payment for the stock shall be issued only for money *paid,* for labor *done,* or property *actually received,* clearly indicate that the intention was that the assets of corporations created in Texas should consist of property capable of being applied to the payment of debts and of distribution among the stockholders. The word, "Property," as used in that section is so qualified by the words, "actually received," as to clearly show that it was the intention that the property should be of such a character as could be delivered to the corporation and not of a character that could only be communicated to some one of its officers or employes. Skimming parted with nothing substantial, for he had the same legal right to use the formula and impart it to others, after the transfer to the corporation, as he had before the sale. The formula was not "property actually received" by the corporation, for it could not actually receive what Skimming retained. That in which no right is acquired which the law will

protect, can not be "property actually received." We think there can be no doubt that the secret formula was not property within the terms of the Constitution, therefore, the stock, which was issued upon the consideration of its transfer to the corporation, was issued contrary to the Constitution, and those persons who received the stock must be held responsible to the creditors of that corporation for the face value of the shares received by them from the corporation.

It is ordered that the judgments of the District Court and Court of Civil Appeals be reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

Defendant in error asks that this court pass upon the liability of Sanger, Edwards & McClintock and affirm the judgment as to them. We have examined the facts and find the case has not been so developed that we can determine the question of liability of said parties. The motion is overruled and the case remanded as to all of the parties.