### W. L. VASSER ET AL. v. CITY OF LIBERTY ET AL.

Decided April 3, 1908.

**1.—Dedication—Public Square—Acts of Republic Construed.**

By the government of Coahuila and Texas four leagues of land were granted to the municipality of Liberty; after the county of Liberty was organized and the town established, the Congress of the Republic passed an Act authorizing and empowering the trustees of the town, in conjunction with the County Court of the county, to sell a portion of the land so granted, and apply the proceeds to the construction of a courthouse, jail, and such other public buildings as they might think proper; in compliance with another Act of Congress a patent was issued by the Commissioner of the Land Office to the trustees of the town and their successors in office; on the old maps of the town there were certain open spaces marked "Courthouse," "Jail," etc.; public buildings, including a jail, were erected by the town on the spaces designated on the map, for the use of the county; from the time the first jail was erected the county had possession of the same and the square or space of ground on which it was situated until a short time before the filing of this suit, with the acquiescence of the town authorities. Held, sufficient to support a finding that the "Jail Square" had been dedicated by the town to the county, and that the title thereto was in the county.

**2.—Subrogation.**

The right of subrogation does not depend upon privity of contract. It includes every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter, but it does not apply in favor of one who officiously, and as a mere volunteer, pays the debt of another, for which neither he nor his property is answerable, and it is not allowed where it would work an injustice to the rights of others.

**3.—Same—Case Stated.**

Where a city sold land to which it had no title, gave warranty deed thereto, received the purchase money and applied it to the payment of outstanding bonds, the city being insolvent and unable to respond on its covenant of warranty, and the purchaser having bought in good faith, upon losing the ground so purchased the purchaser was entitled to be subrogated to the rights of the bondholders whose bonds had been paid with the money received from the purchaser.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*R. D. Wright,* for the city of Liberty.—A purchaser of land from a municipal corporation, where title is warranted, will not, should the title fail, be subrogated to the lien of bond holders, which may have been discharged with the funds realized from such sale, in the absence of a request or agreement, or circumstances requiring such

payment by appellants for their protection. Whiteselle v. Texas Loan Agency, 27 S. W., 315; Oury v. Saunders, 77 Texas, 280; Jones Lumber Co. v. Villegas, 8 Texas Civ. App., 673.

*Stevens & Pickett,* for Vasser et al.—A purchaser who pays money to a municipal corporation in consideration of the conveyance of lands, should such conveyance be held to be invalid, will be subrogated to the rights of creditors holding valid claims which have been paid off with said purchase money. Wells v. Salina, 71 Hun., (N. Y.), 559; 25 N. Y. Supp., 134; Blackburn Bldg. Soc. v. Cunliffe, L. R. 22 Ch. D., 61; Cunliffe v. Blackburn, etc., Ben. Bldg. Soc., L. R. 9 App. Cas., 857; Wenlock v. River Dec. Co., L. R. 19 Q. B. D., 155; 27 Am. & Eng. Ency. of Law (New ed.), p. 259.

*Marshall & Marshall* and *I. B. Simmons,* for interveners.—That the evidence shows a dedication from the State of Coahuila and Texas, and from the Republic of Texas: City of Victoria v. County of Victoria, 100 Texas, 438; State v. Travis County, 85 Texas, 435; Taylor v. Watkins, 26 Texas, 688; Lewis v. San Antonio, 7 Texas, 288; Lamar Co. v. Clements, 49 Texas, 347; New Orleans v. U. S., 10 Pet., 662; Cincinnati v. White, 6 Pet., 438; Von Schmidt v. Widber, 38 Pac., 682; Fessler v. Town of Union, 56 Atl., (N. J.), 276.

That the facts in evidence show an intention by the city of Liberty to dedicate the jail square for the public use: Gilder v. Brenham, 67 Texas, 345; Harris County v. Taylor, 58 Texas, 690; Seguin v. Ireland, 58 Texas, 183; Galveston v. Menard, 23 Texas, 349; Lamar County v. Clements, 49 Texas, 347.

If a map is exhibited and used by the owner of lots and squares, calling for streets and squares thereon, and the owner sells property with reference to such map, this is sufficient as a dedication for such purposes as the map indicates: Oswald v. Grenet, 22 Texas, 94; Corsicana v. Anderson, 78 S. W., 261; Fessler v. Town of Union, 56 Atl. 276.

"Court House," or "Jail Square," or "Church," put on a map made by a city, or under its direction, indicates a dedication for that purpose and city can not deny same: Travis County v. Christian, 21 S. W., 119; Harris County v. Taylor, 58 Texas, 690; Fessler v. Town of Union, 56 Atl. 276.

REESE, Associate Justice.—This is, in the main, a contest between the county and city of Liberty and others, over the title and right of possession of a parcel of ground situated in the city of Liberty, and known as "Jail Square."

On March 20, 1904, the city of Liberty sold and conveyed by warranty deed, for the consideration of $850 cash, to S. Goldstein, the east half of said Jail Square, and on August 12, 1904, sold and conveyed to W. M. Jones by warranty deed, and for the consideration of $500 cash, the southwest quarter thereof. Thereupon, on July 17, 1906, the said county of Liberty instituted this suit against the said Goldstein and W. L. Vasser and others, successors in title

to W. M. Jones, to recover the title and possession of said property. Various grounds are set out as a basis for such recovery; that the property was granted by the State of Coahuila and Texas to the Municipality of Liberty, and that the county of Liberty is the successor to the Municipality; dedication by the State; dedication by the city; estoppel, and limitation. Goldstein and others vouched in the city of Liberty on its warranty and prayed judgment for the amounts paid by them respectively for those parts of the Jail Square bought by Goldstein and W. M. Jones. They also set up that the property was sold for the express purpose of paying certain bonds issued by the city of Liberty for the erection of a City Hall and School House, said sale being authorized by the city council for that purpose; that the money was applied to the payment of said bonds; that the city of Liberty is insolvent and has no means of paying the amount adjudged on its warranty, all money which can be raised by taxation, at the rate authorized by the Constitution, being required for payment of current expenses, so that they will be remediless unless they are subrogated to the rights of the holders of the bonds paid off and discharged by the money paid by them, for which they pray. They contested the right of the county to the land.

The city of Liberty set up their right to the property, denied the title of the county, and denied the right of Goldstein to subrogation.

B. M. O'Brien and others, citizens of the city of Liberty, owning property adjacent to Jail Square, intervened, claiming that the property was dedicated to public use, and could not be diverted to private use, as was attempted to be done by the sale by the city of Liberty to said Goldstein and Jones, and prayed that said deeds be cancelled and the parties be enjoined from private use of the property.

The case was tried by the court, without a jury, and judgment rendered in favor of the county of Liberty as to the right of the property; in favor of Goldstein, Vasser and others against the city of Liberty on their respective warranties, but denying them the right of subrogation, and in favor of O'Brien and others, interveners, enjoining the use of the property for any private purpose. From this judgment the city of Liberty and Goldstein, Vasser and others have appealed. No conclusions of law or fact are found in the record.

It is not contended on this appeal by any of the parties, that the city of Liberty, even if it be, as contended, the owner of Jail Square, had the right to dispose of it by sale to private individuals, as was done. Nor is any complaint made here of the judgment against the city of Liberty on its warranties. So there will be no further discussion of these issues.

The property in question is a part of the four leagues of land granted to the Municipality of Liberty by the government of Coahuila and Texas. (1 Gam. Laws, p. 182.) The county of Liberty came into existence as a county of the Republic of Texas in 1837. (1 Sayles Early Laws, art. 404.) The town of Liberty was laid off and established in 1831, and was regularly incorporated by Act of Congress, approved June 7, 1837. (1 Gam. Laws, p. 304.) Section

6 of this Act provides that "Whereas there are four leagues of land belonging to said town which are now useless, the trustees shall and are hereby authorized and empowered in conjunction with the County Court of the County of Liberty, to alienate said lands, or such portion thereof as they may deem advisable; the proceeds of such sales to be by them jointly appropriated to the construction of a court house, jail and such other public buildings and for such other purposes as they may think proper."

By Act of Congress of the Republic approved February 5, 1840, the Commissioner of the General Land Office was required to issue patents to the trustees of the town of Liberty to the four leagues of land belonging to said town, in accordance with the terms of the colonization and other laws making the concession of the four leagues to said town, in accordance with which patent was issued December 31, 1841, to the trustees of the town of Liberty and their successors in office. Certain open spaces or squares are delineated on old maps of the town, one of which is marked "Court House" and another "Jail."

We have had little assistance from the briefs in the matter of presenting a statement of the facts with reference to the use of this Jail Square, and the evidence in the record is so presented as to render it difficult to do so. We find, however, that very early in the history of the town, about 1848, a court house and other public buildings were erected by the town council for the use of the county. One of the public buildings was probably a jail. At any rate, at a very early date some sort of a jail was erected on Jail Square for the use of the county, and this jail was located very near the center of the square. This jail was afterwards replaced by a more substantial structure, located at nearly the same place on this square. The evidence as to the control and possession of this entire square is confusing and conflicting, but we find that there is evidence to support a finding that, since the location of the first jail, the county of Liberty has been in possession and control of the entire square, claiming under a dedication thereof by the town of Liberty to the county, for that purpose. The city at one time had a calaboose on it, which was removed several years ago, and at times may have done something towards caring for the property, but the right of possession and control of the entire square by the county for jail purposes has been generaly recognized by the town and city of Liberty, until the act of sale and conveyance to Goldstein and Jones referred to. The evidence is sufficient to authorize the conclusion that in the beginning the entire Jail Square was dedicated by the town of Liberty to the county of Liberty as a place for the location of a jail, and in support of the judgment we so find.

The facts in the record bring the case clearly within the doctrine laid down by the Supreme Court in City of Victoria v. County of Victoria, 100 Texas, 438, and that case is decisive of the main contentions in this. Following the opinion of the Supreme Court in that case, we conclude that the Acts of the Congress of the Republic in recognizing, in the Act incorporating the town of Liberty, the title of the town to the four leagues, and afterwards in directing a patent

therefor to issue to the trustees of the town, established the right and title of the town of Liberty to the four leagues, including the property in controversy, and this regardless of whether the county or the town, independent of those legislative Acts, would have succeeded to the rights of the old Municipality of Liberty.

In this case, as in the Victoria case, as held by the Supreme Court, by virtue of the Act incorporating the town of Liberty, and authorizing the trustees of the town to provide a jail for the use of the county, the trustees of the town had authority to provide, out of the public lands, a site for said jail, and thereby dedicate the ground so provided to the use of the county for that purpose.

Departing here slightly from the conclusion reached upon the facts in the Victoria case by the Supreme Court, we conclude that it was the intention to dedicate the whole of the Jail Square to the use of the county, and that under such dedication the county is now entitled to the possession and control of the entire square. The record does not show the size of the square. If the judgment of the trial court can be sustained by any view of the evidence it is our duty to affirm it, whether the court based its conclusion upon the view taken by us of the law, or upon some other, and possibly erroneous view. The judgment of the court below in favor of the county of Liberty and of the interveners is therefore affirmed.

No complaint is made of the judgment against the city of Liberty in favor of Vasser and others on its warranties, but the said purchasers complain of the judgment denying their right of subrogation to the rights of the holders of the bonds which were paid off and discharged with the purchase money of the lots. We have found that these lots were sold for the express purpose, as authorized by resolution of the city council, of paying certain bonds issued by the city of Liberty; that at least a part of the purchase money of the lots was used for this purpose, and that the city is insolvent, and, by reason of the constitutional limitations upon its general taxing power, the said purchasers are entirely without remedy unless they are subrogated to the rights and remedies of the holders of the bonds so paid off and discharged. The right of subrogation was denied by the trial court, for the reason, as expressed in the judgment, that "there is no privity shown." It is not necessary to the application of the doctrine of subrogation that there should have been any privity between defendants, whose money discharge the bonds, and the holders of such bonds. There is nothing to indicate that the purchasers did not act in the utmost good faith, relying upon the right of the city to sell, and upon its covenants of warranty. "The right of subrogation is a doctrine of equity jurisprudence. It does not depend on privity of contract, express or implied, except in so far as the known equity may be supposed to be imported into the transaction and thus raise a contract by implication. It is founded on the facts and circumstances of each particular case, and on the principles of natural justice." (27 Am. & Eng Ency. of Law, 203; 6 Pom. Eq. Juris., sec. 920.) "It is treated as a creature of equity, and is so administered as to secure real and essential justice, without regard to form, and is independent of any contractual rela-

tion between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, but it is not to be applied in favor of one who had, officiously and as a mere volunteer, paid the debt of another for which neither he nor his property was answerable and which he was under no obligation to pay, and it is not allowed where it would work an injustice to the rights of others." (Sheldon on Subrogation, sec. 1.)

The latter portion of the quotation states the only limitations upon the doctrine. The general principle thus broadly laid down and generally applied by the courts, will, we think, suffice for the decision of the question as presented by this record. Goldstein and Jones can in no sense be considered as volunteers or intermeddlers, paying a debt with which they had no concern, certainly not more so than persons who buy property at a void execution, administrator's or guardian's sale where the purchase money is applied to the discharge of debts. (McDonough v. Cross, 40 Texas, 285; Burns v. Ledbetter, 54 Texas, 385; Texas Land & Loan Co. v. Blalock, 76 Texas, 85; Harrison v. Ilgner, 74 Texas, 86; Howard v. North, 5 Texas, 316.) In such cases, as held in the last case cited, the purchaser is entitled to be substituted for the creditor whose debt has been paid. (27 Am. & Eng. Ency. of Law, p. 240, and authorities cited in note; Newbold v. Peoria & S. R. R. Co., 5 Ill. App., (Bradwell), 267; Coffin v. Board of Com. of Kearney Co., 114 Fed., 518; Irvin v. Board of Coms. of Kearney Co., 75 Fed. 765.)

It was not by the voluntary act of the purchasers that they became the creditors of the city of Liberty by the act of the payment of the bonds with the money paid for the lots, which by its covenants of warranty, the city was obliged to return to them. They thought they were getting a good title, and had no anticipation of having recourse to such warranty. So they can not be said to be volunteers officiously paying a debt for which they were not answerable. We are clearly of the opinion that they are entitled upon every principle of equity and justice to be subrogated to the rights of the holders of the bonds which were discharged with the money paid by them for the lots sold for the express purpose of paying the bonds, as set out in the resolution of the city council. They are entitled to stand in the shoes of the bond-holders and to enforce every right which such bond-holders may have had, for the payment of such bonds so far as is necessary to secure re-imbursement. This includes the right to enforce the bonds themselves even though they be discharged in law, and to claim all the incidents of such bonds. (6 Pom. Eq. Juris. sec., 924.)

The judgment of the trial court therefore in this respect will be reversed and the cause remanded with instructions to make such orders as may be necessary or proper to afford defendants Goldstein, Vasser and others the relief to which they are entitled by reason of their subrogation to the rights of the holders of the bonds. In all other respects the judgment of the trial court is affirmed.

*Reversed and remanded in part. Affirmed in part.*