THE STAMFORD TRUST COMPANY, TRUSTEE, *vs.* THE YALE AND TOWNE MANUFACTURING COMPANY ET ALS.

Third Judicial District, New Haven, January Term, 1910.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The "capital stock" of a corporation, in its strict and primary sense, is the fund, property, or other means contributed, or agreed to be contributed, by the shareowners as the financial basis for the prosecution of the business of the corporation; such contribution being made directly through stock subscriptions, or indirectly through the declaration of stock dividends.   The term signifies those resources whose dedication to the uses of the corporation is made the foundation for the issuance of certificates of capital stock, and which, as the result of the dedication, become irrevocably devoted to the satisfaction of all the obligations of the corporation.

The general incorporation Act of 1903 does not forbid a specially chartered corporation which is empowered to increase its capital stock, from making such increase by way of a stock dividend, that is,

by capitalizing so much of its surplus as, at a fair and honest valuation, is equal to the par value of the additional shares of stock.

The controlling purpose of § 12 of the Act of 1903, which provides that no corporation shall issue any certificates for stock until it has been subscribed and paid for in full, is not so much to require a technical subscription as it is to prevent the issue of any certificate for shares of stock that have not in some way been fully paid up; and to give it such effect the word "subscriber" must and properly may be taken to include every shareholder however he becomes such, whether by signing a subscription paper, by purchase from one who has so subscribed, or from his assigns, or by purchase from the corporation.

The ordinary manner in which stockholders in a corporation give directions is, in the absence of a charter or statutory provision to the contrary, by the vote of a majority of the shares represented at a meeting of the corporation duly called.

Argued January 18th—decided February 3d, 1910.

ACTION by a stockholder in the defendant company against it and its directors, for an injunction against its declaring a stock dividend; brought to the Superior Court in Fairfield County. A temporary injunction was granted (*Burpee, J.*) and the cause then reserved on a demurrer to the answer, for the advice of this court. *Judgment advised for defendants.*

*William Waldo Hyde* and *Alvan Waldo Hyde*, for the plaintiff.

*Henry Stoddard* and *Frederick C. Taylor*, for the defendants.

BALDWIN, C. J.   The following state of facts is admitted by the pleadings:—

The defendant company was originally incorporated under the general incorporation laws of Connecticut, with a capital of $650,000; but received a special charter in 1882. This gave it power to increase its capital stock "from time to time, to an amount not exceeding

on the whole two million dollars, and to use and dispose of the same in such manner as the stockholders may direct." 9 Special Laws, p. 339, § 3. By an amendment to its charter, granted April 18th, 1907 (15 Special Laws, p. 96, §1), it was "authorized to increase its capital stock, from time to time, to an amount not exceeding, in the aggregate, five million dollars, subject to all the provisions of the statute laws concerning the issue and increase of capital stock by specially chartered corporations." In October, 1909, it then having a capital stock of 15,000 shares, of the par value of $100 each, all of which had been issued, its shareholders voted to "authorize, approve and recommend, a transfer to the amount of five hundred thousand (500,000) dollars in value, of a portion of the surplus now used as working capital, to and the conversion and merger of the same into, the permanent capital stock of this corporation, by the increase of the capital stock in that amount, and the issue of five thousand (5,000) additional shares, each of the par value of one hundred (100) dollars, and the distribution thereof among the stockholders in the proportion of one new share to each three of the present outstanding capital stock; . . . and the transfer from the surplus account to the capital stock account of the said sum of five hundred thousand (500,000) dollars, in payment for such issue of increased capital stock"; and that "the capital stock of this corporation be so increased from fifteen hundred thousand (1,500,000) dollars, to two million (2,000,000) dollars, by the issue of said five thousand (5,000) additional shares of stock, each of the par value of one hundred (100) dollars, which additional shares, together with the present share capital, aggregating in the whole two million (2,000,000) dollars, shall be and remain common stock." * This

---

* There were also provisions as to fractional shares and scrip, which are here omitted as immaterial to the questions involved in this action.

action was taken by a stock vote of 13,988 shares in its favor and 92 shares against. The plaintiff owned 82 of the 92 shares, and the rest were owned by one other person. They were the only ones out of 144 shareholders who have manifested any disapproval of the proposed increase of capital.

The general incorporation laws of Connecticut (Public Acts of 1903, Chap. 194, pp. 150, 154, 165) contain the following provisions:—

"Section 1. *Application.* The provisions of this part shall apply to all corporations heretofore and hereafter organized under any general or special law of this state, except when otherwise expressly stated, but shall not be held or construed to alter or affect any provision of any special charter inconsistent herewith, except as provided in section 37 of this act.*

"Sec. 12. *Receipts for payment of stock subscription; directors' liability.* No corporation shall issue any certificates for stock until the stock has been subscribed and paid for in full. The treasurer of such corporation shall issue and deliver to each subscriber a receipt, countersigned by the secretary and under the corporate seal, stating the amount such subscriber has paid on his subscription, and the number of shares of full paid and non-assessable stock for which, he or his transferee, upon the payment of the balance due upon his said subscription, will be entitled to receive a certificate. Said officers shall enter upon such receipt the dates and amounts of all subsequent payments. The persons to whom such receipts are issued shall be deemed to be stockholders. If any stock shall be paid for otherwise than in cash, a majority of the directors shall make and sign upon the record book of the corporation a statement showing particularly of what the property re-

---

* Sec. 37 provides for annual statements of most corporations having capital stock.

ceived in payment for stock subscriptions consists, and that it has an actual value equal to the amount for which it is so received. The judgment of the directors as to the value of property accepted in payment of stock shall be final; but the directors concurring in the judgment of such value, in case of fraud in the over-valuation of such property, shall be jointly and severally liable to the corporation for the amount of the difference between the actual value of any property so accepted in payment at the time of such acceptance, and the amount for which it is received in payment. The secretary shall keep a record of the names of the directors concurring in such judgment of value.

"Sec. 47. (As amended by Public Acts of 1907, p. 855, Chap. 246.) Every specially chartered corporation having power by law to increase its capital stock may from time to time so increase it by issuing additional shares of the same par value, under such limitations as to the amount issued and of every other nature whatsoever as may exist either in its charter or in any statute affecting it; provided, that, at a meeting of its stockholders warned and held for that purpose, such increase shall have been authorized by a vote of at least two-thirds of each class of stock issued and outstanding at the time of said vote, which vote shall state the amount of the increase so authorized; or provided, that, at a meeting of its stockholders held for that purpose, a written or printed notice of which stating the day, hour, place, and purpose thereof shall have been given by the president or secretary to each stockholder by leaving such notice with him or at his residence or usual place of business or by mailing such notice to him at his last known post office address at least thirty days before such meeting, such increase shall have been authorized by a vote of at least two-thirds of each class of stock represented at such meeting. Before any such

corporation shall issue any shares of such increased capital stock so voted, a majority of the directors shall make, sign, and swear to and file in the office of the secretary of the state a certificate setting forth the number of shares so voted and the par value thereof. The secretary shall examine the same, and if he shall find that it conforms to law and that all taxes have been paid in accordance with the provisions of section 57, shall endorse thereon the word 'Approved,' with his name and official title, and shall thereupon record such certificate in a book kept by him for that purpose.

"Sec. 71. *Issue of additional stock.* Every corporation may, at any meeting warned and held for that purpose, empower its directors to issue shares of its unissued authorized capital stock. At the time for the filing of its next annual report after the issue of any such shares, a majority of the directors shall make and file a certificate setting forth the facts relating to such issue similar to the facts relating to the original issue of stock required by subdivisions (1) to (5), inclusive, of section 69 of this act." *

The new stock, as well as the old, of the defendant company was common stock.

The certificate called for by § 47 was duly filed, endorsed and recorded. Subsequently the board of directors passed votes reciting the stockholders' vote, and the filing and approval of the certificate; setting forth that in its judgment the actual surplus of the company over and above all liabilities, capital stock included, exceeded $500,000; and ordering the issue to stockholders of record of 5,000 new shares in the proportion of one new share for each three old shares, and that in full payment therefor the treasurer should transfer on the books of the company $500,000 from surplus ac-

---

* Sec. 69. prescribes the form of the certificate of organization.

count to capital stock account, and credit each stockholder with his proportionate part of the new shares.

The company has been in business for over forty years. The market for its manufactures is extensive, and, to hold it, the prudent conduct of affairs has required and will require the permanent use in such business of a much greater amount, in value of assets, than the amount of its present capital stock. It has therefore, for many years, been its policy and practice to accumulate a surplus above its capital stock and indebtedness, and use it for additions to its plant and extension of its business, investing much of it in buildings, machinery, tools and fixtures, which cannot be withdrawn or converted into cash without great loss. Such surplus is now over $500,000 in value.

The board also entered on the record book of the company a statement that it had declared a stock dividend of $33\frac{1}{3}$ per cent; that the actual surplus of the company exceeded $500,000; and that there had been received in payment for the stock and scrip so issued $500,000 in actual value of the surplus of the company, carried to and merged in capital stock and convertible scrip accounts.

The company is paying dividends at the rate of eight per cent a year.

The term capital stock of a corporation, taken in its strict and primary sense, "is employed to designate specifically the fund, property or other means contributed, or agreed to be contributed, by the shareowners as the financial basis for the prosecution of the business of the corporation, such contribution being made either directly through stock subscriptions, or indirectly through the declaration of stock dividends. As thus used the term signifies those resources whose dedication to the uses of the corporation is made the foundation for the issuance of certificates of capital stock, and

which, as the result of the dedication, become irrevocably devoted to the satisfaction of all the obligations of the corporation." *Smith* v. *Dana*, 77 Conn. 543, 552, 60 Atl. 117. The directors, and a majority largely exceeding two thirds of the shareholders of the defendant, have determined to make such a dedication of a large amount of accumulated property, representing a surplus over and above its present capital stock and indebtedness, which is invested in the plant and business, but, unless some such step be taken, might at any time be diverted from the uses of the corporation to those of the shareholders, by turning it into cash and declaring a dividend therefrom. The plan adopted is that of making a stock dividend.

There can be no doubt that such action was fully within the power of its directors, with the approval of the necessary majority of the shareholders, prior to the revision of our general incorporation laws in 1903. Section 47 of that revision authorized the defendant to increase its capital by issuing additional shares, "under such limitations as to the amount issued and of every other nature whatsoever as may exist either in its charter or in any statute affecting it."

No limitations which militate against such a stock dividend are imposed by the defendant's charter or by any statute. The letter of § 12 gives some support to the plaintiff's contention, but is controlled by its spirit and object. That object plainly was twofold: to preclude the issue of certificates for stock until the shares are fully paid for; and to prevent the acceptance of property other than cash in payment, at a valuation greater than the sum which it is actually worth. Read with reference to the mischief which it was designed to remedy, it extends to every case in which one claiming the position of a shareholder seeks to obtain a certificate of stock. Its controlling purpose is to prevent the is-

sue of any certificate of stock for shares that have not been fully paid up, because such a certificate might mislead those dealing with the holder by inducing them to suppose that his stock was liable to no assessments. To give it this effect, the word "subscriber" must and properly may be taken as used to include every shareholder, whether he might become such by signing a subscription paper, or by purchase from one who had so subscribed, or from his assigns, or by purchase from the corporation. In none of these cases can a certificate of stock be issued until the share has in some way been fully paid up.

A later section of the Act of 1903 expressly sanctions, under certain circumstances, the issue and sale, by a corporation, of shares never made the subject of a formal subscription. Section 17 forbids the issue of certificates for fractions of shares, but provides that "whenever fractional rights result from an increase or reduction of capital stock and the stockholders fail to combine the same by purchase or sale, the directors shall, after due notice, sell such rights to the highest bidder and issue proper certificates therefor." This throws a strong light on the intent of § 12.

Those who drafted the Corporation Act of 1903 had before them our decision, rendered in 1901, in *New Haven Trust Co.* v. *Gaffney*, 73 Conn. 480, 47 Atl. 760. That was an action by the receiver of an insolvent corporation against one who had bought from it a hundred shares of its stock for sixty-five per cent of their par value. They were issued to him accordingly, but he never signed any subscription paper. The receiver sued for the balance between the amount paid and the par value. We held that by the issue of the shares to the defendant "he became as much obligated to pay its full par value when properly called upon to do so, as if he had been an original subscriber for it"; and that

his purchase of the shares, "it not being alleged that they were ever issued before, was equivalent to an original subscription for them."

We are therefore of opinion that § 12 of the Act of 1903 does not forbid stock dividends to those who have not made a technical subscription for the stock. Such dividends are fully recognized by General Statutes, § 377, as a mode of separating the accumulated earnings of a corporation from the *corpus* of its assets and dividing them among the shareholders.

In determining the equities between the parties, it is also to be remembered that the defendant company, since 1882, has had the right to increase its capital stock to not exceeding $2,000,000 par value, and to use and dispose of new stock up to that limit, from time to time, "as the stockholders may direct." The stock issue now in question is within this limit. The fund of which the plaintiff is a trustee was constituted in 1901. As a shareholder in the defendant it received the stock subject to all the provisions of its charter. The ordinary manner in which stockholders in a corporation give directions is, in the absence of statutory or charter provision to the contrary, by the vote of a majority of the shares represented at a meeting of the corporation duly called. To sanction the issue of the shares now in question, a two-thirds vote of the stock was required by the Act of 1903 (§ 47). Nothing either in the defendant's charter or in the general laws required unanimity.

The plaintiff therefore has made out no case for relief.

The Superior Court is advised to dissolve the temporary injunction, overrule the demurrer to the answer, and dismiss the complaint.

The costs of this court will be taxed in favor of the defendants.

In this opinion the other judges concurred.