**GENERAL BONDING & CASUALTY INS. CO. et al. v. MOSELY et al.    (No. 729.)†**

(Court of Civil Appeals of Texas. Amarillo. Feb. 20, 1915. On Motion for Rehearing, March 27, 1915.)

1. CORPORATIONS �köm99—ISSUANCE OF STOCK—STATUTORY REQUIREMENTS—ULTRA VIRES.

Under Const. art. 12, § 6, providing that no corporation shall issue stock except for money paid, labor done, or property actually received, stock issued by a corporation on a subscription contract before compliance with statutory requirements for payment of stock is ultra vires and void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. ⊙═99.]

2. CORPORATIONS ⊙═88—ISSUANCE OF STOCK—PAYMENT—EFFECT.

A voluntary payment by a third person to a corporation of the amount due for stock issued to a subscriber extinguishes the debt, though there is an agreement between the third person and the corporation that the money advanced shall be returned to the third person as soon as

the corporation has obtained a note from the stock subscriber secured by mortgage.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 337–364, 425–428; Dec. Dig. ☞88.]

**3. Insurance ☞33—Corporations—Organization—Statutes.**

Rev. St. 1911, art. 1146, enacted in 1907, prohibiting any corporation from issuing any stock except for money paid or labor done, reasonably worth the sum at which it was taken by the corporation, or property actually received reasonably worth the sum at which it was taken, is superseded by Acts 31st Leg. c. 108, authorizing the incorporation of insurance companies and providing that the articles of incorporation shall show that the capital stock has been subscribed and fully paid up and in the hands of the corporators before the filing of the articles of incorporation, and an insurance corporation can only be organized as prescribed by the act.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 38; Dec. Dig. ☞33.]

**4. Insurance ☞33—Corporations—Statutory Provisions — "Capital Stock" — "Paid Up"—"Actually Received."**

Under Const. art. 12, § 6, prohibiting the issuance by any corporation of stock except for money paid, labor done, or property actually received, and Acts 31st Leg. c. 108, providing for the organization of insurance companies, and declaring that the articles of incorporation shall show that the capital stock has been "paid up," and requiring the insurance commissioner after organization to examine the affairs of the corporation, and to issue a certificate of authority to transact business on finding that the capital stock has been paid up, and is in the custody of the officers, either in cash or securities, the giving of notes secured by deed of trust for stock subsequently issued by an insurance company is not payment for the stock; since the term "capital stock" means the fund contributed by the shareholders as the financial basis of the corporation's business, and the term "paid up" contains the idea of full payment of the authorized capital into the corporation either in money or its equivalent in property, effecting the extinguishment of subscription liability for stock, and the words "actually received" mean the receipt and payment of something real and tangible, as distinguished from something constructive or speculative.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 38; Dec. Dig. ☞33.

For other definitions, see Words and Phrases, First and Second Series, Actually Receive; Capital Stock; Paid Up.]

**5. Cancellation of Instruments ☞4 — Right to Cancellation — Violation of Statute.**

Though the court will leave parties in pari delicto where it finds them, it will cancel notes secured by a mortgage given for stock subsequently issued by a corporation in violation of law.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 1; Dec. Dig. ☞4.]

Error from District Court, Hardeman County; J. A. Nabers, Judge.

Action by A. Mosely and another against the General Bonding & Casualty Insurance Company and others. There was a judgment for plaintiffs, and defendants bring error. Affirmed.

Locke & Locke, of Dallas, for plaintiffs in error. M. M. Hankins, of Quanah, and Jno. W. Veale, of Amarillo, for defendants in error.

HALL, J. This suit was brought by A. Mosely & Bro., a firm composed of A. Mosely and W. A. Mosely, against the General Bonding & Casualty Insurance Company (which will hereinafter be called the Insurance Company), John D. Stephenson, James A. Stephenson, Ed Kneeland, and T. L. Camp, to rescind the plaintiff's subscription of ten shares of stock of the Insurance Company and to recover $500 paid thereon, to cancel a note for the remaining subscription price and a deed of trust on certain property in Quanah securing the same, and to recover $280 interest already paid on such note.

The grounds assigned were fraudulent misrepresentation and invalidity of a note and deed of trust executed on account of a subscription to corporate stock. All of the defendants denied the fraud and invalidity and the defendant Insurance Company, owner of the note and deed of trust, prayed in reconvention for judgment thereon and for foreclosure of the lien. The court directed a verdict in favor of the plaintiffs for cancellation of the note and deed of trust, but denied the plaintiffs the right to recover the several sums of money already paid. A judgment was entered accordingly.

It appears that on the 27th day of August, 1910, defendants in error executed and delivered to a copartnership composed of J. T. Boone, J. T. Boone, Jr., W. B. Anderson, Ed Kneeland, James A. and John B. Stephenson, calling themselves Texas Surety & Casualty Organization Company (hereinafter called the Organization Company), an instrument in writing, wherein they subscribed for ten shares of stock of a corporation to be thereafter organized, incorporated, and named, whereby they agreed to pay $2,250, as follows: $1,750 to George W. Riddle, Isaac B. Walker, and A. Ragland, trustees, to be held and disbursed by them according to a trust agreement made part of the subscription contract, which amount was to be paid at any time after October 1, 1910, and immediately upon receipt of notice from said Organization Company that the Insurance Company was ready for incorporation; the remaining $500 to be paid at once to the Organization Company. The defendants in error did not then pay the $500, but executed their short-time note for said sum, which was thereafter paid. The Insurance Company was incorporated November 30, 1910. Defendants in error had not at that time paid the amount of their subscription to stock, and on December 3, 1910, they executed and delivered to plaintiff in error their note for $1,890, being the amount of principal and interest due upon their subscription

contract, and at the same time executed and delivered the above-mentioned mortgage, to secure the note for $1,890, and two interest notes for $140 each, which were simultaneously executed. The two interest notes for $140 each were afterwards paid. On December 30, 1910, the Insurance Company issued its certificate of stock in the name of defendants in error for ten shares, certifying that defendants in error were the owners of ten shares of the stock "fully paid and nonassessable." This certificate was never delivered to defendants in error, but was held as additional security for the note. Plaintiffs in error offered to prove that on November 30, 1910, when the Insurance Company was incorporated, the Organization Company paid into the corporation in cash on account of plaintiffs' subscription $1,750, without any "strings," save that, when the plaintiffs furnished satisfactory securities to the Insurance Company for a loan of $1,750, the money should be returned to the Organization Company. The charter states that the Insurance Company is formed for the purpose of: (1) Transacting all kinds of surety business; (2) all kinds of casualty insurance business; and (3) all kinds of liability insurance business. The three incorporators, Anderson, Kneeland, and John B. Stephenson, as required by Vernon's Sayles' Civil Statutes, art. 4942c, filed with the commissioner of insurance and banking their affidavit reciting:

"All the capital stock of said corporation, to wit, $200,000, has been subscribed in good faith and fully paid for in cash."

This insurance company was organized under the provisions of chapter 108, Acts 31st Legislature 1909 (Gamel's Laws of Texas, vol. 14, p. 192). This act expressly provides that the articles of incorporation shall show that the capital stock has all been subscribed and fully paid up and in the hands of the corporators before said articles of incorporation are filed. Section 2, subd. (e). Section 3 provides that, when such articles of incorporation are filed with the commissioner of insurance and banking, together with an affidavit made by two or more of its corporators that all the stock has been "subscribed in good faith and fully paid for," he shall, upon payment of the charter fee, submit the charter to the Attorney General, and, in the event of its approval by this officer, the commissioner shall then authorize the company to organize. Section 4 makes it the duty of the commissioner, after organization, to thoroughly examine the company's affairs, and, if he finds that all the capital stock has been fully paid up, and is in the custody of the officers of the company either in cash or securities of the class in which such companies are authorized by this act to invest or loan their funds, he shall issue to such company a certificate of authority to transact business, provided, however, two officers of the company shall first file with him a schedule of the company's assets and their sworn statement that the same are "bona fide, the unconditional and unincumbered property of the company and are worth the amount stated." This act expressly repeals articles 3049 (Supplement to Sayles' Civil Statutes, 1908–10, p. 208), 3048, and all of chapter 4, tit. 58, Sayles' Civil Statutes. The repealed statutes did not contain the specific requirements set out above, but permitted payments to be made upon stock after incorporation and at such times and in such amounts as the subscription contracts and the stockholders might require. The changes in the law wrought by the amendment of 1909 demonstrate the intention of the Legislature to require all subscriptions to the capital stock to be fully paid in in good faith before organization and incorporation; that such payments shall be made either in cash or securities, readily convertible into cash; that such assets are bona fide the unconditional property of the company and worth the amounts stated.

[1, 2] On November 30, 1910, when the company was incorporated, defendants in error had paid nothing, and the corporators had no obligation of theirs to pay other than the subscription contract mentioned above. The law, therefore, which required that their stock be "fully paid for and in the hands of the corporators," had not been complied with. Under the Constitution (article 12, § 6), it is clear that the issuance of such stock upon a subscription contract, and before compliance with the statutory requirements was ultra vires and void. Mason v. First National Bank of Paint Rock, 156 S. W. 366. Plaintiffs in error sought to avoid this result by offering to prove upon the trial that the Organization Company had advanced to the Insurance Company on the date of its organization the amount due and unpaid upon the subscription contract of defendants in error. If this was done, the transaction was without the knowledge or consent of defendants in error, and has not since been ratified by them. If this testimony had been admitted, the trial judge should have at once directed a verdict for the defendants in error upon the theory that their debt was canceled. The voluntary payment by the Organization Company to the Insurance Company of this amount would, in law, have extinguished the debt, although there was an agreement between the two companies that the money advanced should be returned to the Organization Company as soon as the Insurance Company had obtained the secured note from defendants in error. Defendants in error were not bound by that agreement, and it in no wise changed the legal effect of the voluntary payment of another's debt by a stranger. The $1,750 so deposited was never "bona fide the unconditional and unincumbered property of the company." Temporarily depositing the money in lieu of the subscription contract as a basis for the affida-

vit to be made by two of the corporators was ingenious financiering on their part, which enabled them to circumvent the law, deceive the commissioner, and thimble-rig the state for a charter, and, if proven, it should have been held as a payment or extinguishment of the subscription obligation. Harrison v. Hicks, 1 Port. (Ala.) 423, 27 Am. Dec. 638; Hatton v. Bodan Co., 57 Tex. Civ. App. 478, 123 S. W. 163; Oury v. Saunders, 77 Tex. 280, 13 S. W. 1030; Vasser v. City of Liberty, 50 Tex. Civ. App. 111, 110 S. W. 119; Tarver v. Land Co., 7 Tex. Civ. App. 425, 27 S. W. 40; Sheldon on Subrogation, §§ 1, 3; 37 Cyc. 376, note 67. This evidence having been excluded, the question is: Did the court err in directing a verdict upon the evidence already admitted? Before the issuance of any stock, the law requires not only the performance of the conditions precedent hereinbefore set out, but sections 4 and 10, subd. (b), require that, if stock had been fully paid up, and is in the custody of the officers in the form of first liens upon real estate, the value and title of the real estate should be submitted to and approved by the commissioner, and the buildings thereon insured against loss by fire for at least 50 per cent. of their value. None of these things were done; the land was not appraised by any one until January 26, 1911; the insurance policy upon the buildings situated upon the lot was not transferred to the company until August 22d following. The notes and deed of trust were not executed until several days after the stock was issued, and, if they may be called securities, they were certainly not included in the preliminary affidavit which the law required the corporators to furnish the commissioner, even before incorporation. Having been issued in violation of the Constitution and statutes, the stock is absolutely void, and we think the promise of defendants in error made to pay for stock so issued either before or since its issuance is a nullity.

[3, 4] Article 1146, R. S. 1911, is merely an amplification of article 12, § 6, of the Constitution, and is the general law prohibiting all corporations from watering their stock. It provides that no corporation, domestic or foreign, doing business in the state, shall issue any stock whatever except for money paid, labor done, which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received, reasonably worth at least the sum at which it was taken by the company. We think this article is sufficient to protect subscribers and creditors of corporations organized for trading and other ordinary purposes; but the plaintiff in error company is engaged in a business requiring ready cash to meet demands arising at unexpected times in uncertain amounts. An insurance company, in the very nature of things, should have on hand, either in cash or in available securities, sufficient funds with which to meet extraordinary emergencies. This it could not

do, at least for a time, if the subscribers paid for stock with labor or with property other than cash or securities easily convertible into cash. We think for that reason the Legislature passed the act of 1909 specially relating to insurance companies, requiring subscribers to the capital stock of such corporations organized under it to pay for their stock fully and in good faith before incorporation, and its later and special intent should in such cases prevail over article 1146, which is an older and a general statute. We think this is also the reason why the act provides that the securities shall be inspected and approved by the commissioner before incorporation.

The terms "capital stock," "paid in," and "fully paid in," have a fixed legal meaning, as shown by the following quotations from Words and Phrases:

" 'Capital stock' has been defined as follows: When applied to the amount subscribed toward the stock of a corporation: 'Capital stock of a corporation, in its primary sense, means the fund, property, or other means contributed or agreed to be contributed by the share owners as the financial basis of the corporation's business, either directly through stock subscriptions or indirectly through the declaration of stock dividends. The term signifies those resources the dedication of which to the uses of the corporation is made the foundation for the issuance of certificates of capital stock, and which, as the result of the dedication, becomes irrevocably devoted to the satisfaction of all obligations of the corporation. Stamford Trust Co. v. Yale & Twone Mfg. Co., 75 Atl. 90, 83 Conn. 43."

"The capital stock of a corporation consists of the property and money subscribed and paid in for the purpose of carrying on its business. Jones v. Davis, 35 Ohio St. 474."

"The term 'capital stock' has a fixed and definite meaning, and designates the amount of capital contributed by the stockholders for the use of the company. Belvidere Bank v. Tunis, 23 N. J. Law (3 Zab.) 546."

The words "fully paid in" have been defined as follows:

"The language of section 1765, R. S. 1898, 'capital fully paid in,' contains the idea of full payment of the authorized capital into the corporation, either in money or its equivalent in property, effecting the extinguishment of the subscription liability for the stock and an actual addition to the capital of the corporation; not a mere agreement to contribute to the capital stock. Williams v. Brewster, 93 N. W. 479, 117 Wis. 370."

Applying this language, which we approve, to the facts of this case, it having been shown that defendants in error had not paid for any part of the capital stock at the time it was issued nor since, they are therefore not stockholders in good faith. The execution of the note and mortgage on December 3d did not "effect an extinguishment of their subscription liability for stock," and, until the note has been paid, there has been no "actual addition to the capital of the corporation." It is simply "a mere agreement to contribute to the capital stock."

We do not construe the following language in section 4 of the act: "And if he shall find that all of the capital stock of the company, amounting to not less than $100,000.00 has

been fully paid up and is in the custody of the officers, either in cash or securities of the class in which such companies are authorized by this act to invest or loan their funds he shall issue," etc.—to mean that a subscriber may pay for his stock with his own note, however well secured with a first lien upon real estate. If the Legislature so intended, then that portion of the act violates the provisions of the Constitution as construed by our Supreme Court. The right of a subscriber to stock in a corporation to pay for the same by delivery of his own obligation has been denied by the decisions of this state several times. In the case of McCarthy et al. v. Texas Loan & Guaranty Co., 142 S. W. 96, in which the Supreme Court refused a writ of error, Justice Higgins said:

"The provision of the Constitution under consideration relates, not to the incorporation of corporations, but to the issuance of its stock, and we think its purpose was to prohibit the issuance of the stock until paid for; and we hold that the execution and delivery of the stockholder's promissory note is not payment, within the contemplation of the law, but a mere promise to pay. The fact that the notes to be given by McCarthy were to be indorsed by a solvent indorser and secured by a pledge of the stock does not in any wise affect the question. If it is permissible to accept notes at all, unsecured, as well as secured, notes could be accepted. Neither is the question affected by the fact that part of the subscription is to be paid in cash; for, if a part cash payment meets the requirements of the Constitution, then there is no limit to the minimum cash payment that could be accepted, and to hold that a part cash payment would be sufficient, in effect, would nullify the constitutional provision. * * * The issuance of corporate stock as fully paid up before it has, in fact, been paid up, is an ultra vires act, and has been a most prolific source of litigation. * * * It is further contended that such notes are 'property actually received' within the meaning of the Constitution. It is true a promissory note is 'property' in one sense of the word, as for instance, when it is in the hands of a third person. It has frequently been so held; but, as between the original parties to the same, it is but a mere evidence of indebtedness, and it would be a strained and unnatural interpretation of the Constitution to hold that it was there used in the sense contended for by appellants. To so hold would be to say that in one breath the organic law expressly refused to accept it as 'money paid,' and in the next breath permitted it under the guise of property; thus convicting the framers of the Constitution of a palpable inconsistency."

In San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201, 114 S. W. 1174, Judge Brown denied the appellee the right to claim stock to be paid for in the future, saying:

"The terms 'money paid' are very definite and plain, and do not mean that stock can be sold for money to be paid, but must be sold for cash."

In Mason v. First National Bank of Paint Rock, supra, Jenkins, Associate Justice, held that a note given for the purchase price of corporate stock is neither money paid nor property actually received within the meaning of the Constitution, and that the note itself was void and uncollectible.

"The purpose of the convention in enacting that provision of the Constitution was to secure creditors, as well as stockholders, of corporations against the practice which was too common for corporations issuing fictitious stock and stock upon an insufficient consideration, whereby the actual capital was much less than the amount represented by the shares issued and sold by the corporation. The terms in which this section of the Constitution is expressed indicates the purpose that the assets of the corporation should be something substantial, and of such a character that they could be subjected to the payment of claims against the corporation, as well as to secure the shareholders in their rights in the capital stock. * * * The emphatic terms in which the section of our Constitution above quoted is expressed, that the payment for the stock shall be issued only for money paid, for labor done, or property actually received, clearly indicate that the intention was that the assets of corporations created in Texas should consist of property capable of being applied to the payment of debts and of distribution among the stockholders. The word 'property,' as used in that section, is so qualified by the words 'actually received' as to clearly show that it was the intention that the property should be of such a character as could be delivered to the corporation." O'Bear-Nester Glass Co. v. Antiexplo. Co., 101 Tex. 431, 108 S. W. 967, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865.

We are not called upon in this case to decide the question as to whether or not, under the above-quoted language from section 4, stock could have been issued in exchange for the note of the subscriber secured by a first lien upon real estate of double the face value of the stock, because the note and mortgage in this case were not in existence when the stock was issued. We believe, however, that the decisions from which we have just quoted sustain such a rule. The note is a chose in action, and the deed of trust in this state merely security for the debt. While they are, in a sense, property, they are not, when considered, either separately or together, even if they had been accepted by the company in full payment for the stock, "property actually received," within the meaning of the Constitution. The words "actually received," as there used, mean the receipt and possession of something real and tangible, as distinguished from something constructive or speculative—an existing fact as opposed to a possibility. Bouvier's Law Dictionary; Anderson's Law Dictionary. Execution and delivery of the note and mortgage is said by plaintiff in error to be a loan; but this is a fiction. The record fails to show that defendants in error ever borrowed a dollar from the company. The obligation simply represents the amount which they agreed to pay for the stock, and nothing else; calling it by another name does not change the character of the transaction. Why the framers of the Constitution and the Legislature should require subscribers to first pay for their stock in full, either with money, labor done, or property is a question which we are not required to answer; but it is apparent that a corporation is stronger financially when it has the proceeds from the sale of its stock safely in its coffers than if it had issued its stock in return for the promissory notes of its stockholders, with a

possibility of a proceeding in the courts before realizing upon the obligation. This suit is an illustration of that fact. Nor are we able to explain why the law requires a subscriber to first pay for his stock, when he may immediately borrow the amount of his payment upon the same security, with which he was willing to guarantee his note given for the stock, unless it be upon the theory that the framers of the Constitution thought, where the stockholder's treasure was there would be his heart also, and that the officers of a company, charged with the responsibility of preserving its integrity, would look more carefully to the character of security offered than would corporators, who ordinarily are exceedingly anxious to organize and set the company on foot.

[5] Plaintiffs in error having by their cross-action sought to recover upon the note and also to foreclose the mortgage in this suit, the defendants in error prayed for their cancellation. While the general rule is that the courts will leave parties in pari delicto where it finds them, the case of Beer v. Landman, 88 Tex. 450, 31 S. W. 805, would seem to authorize the court, where such relief is asked in the same action, to cancel the illegal instruments.

It is unnecessary to discuss the question of fraud.

The judgment is affirmed.

### On Motion for Rehearing.

We erred in the original opinion in stating that the notes and deed of trust were not executed until several days after the certificate of stock was issued. However, the fact that the certificate of stock was not issued until nearly 30 days after the execution of the notes and lien does not materially change the ground upon which we rested the decision of the controversy.

The motion is overruled.

---

⬙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes