STRINGFELLOW v. PANHANDLE PACKING CO. (No. 90–2901.)

(Commission of Appeals of Texas, Section B. June 21, 1919.)

1. CORPORATIONS ☞34(6) — SUBSCRIPTION CONTRACT—CONTRACT.

Persons signing corporate charter and affidavits that stock had been fully subscribed and that they had paid 50 per cent. of their stock subscriptions, may be held to be a performance of their subscription agreements by state or corporation.

2. CORPORATIONS ☞78 — STOCK SUBSCRIPTIONS—ABANDONMENT.

Evidence that stock subscribers selected certain of their number to effect incorporation, etc., *held* to establish that original subscriptions were not abandoned and that committee was merely acting in representative capacity.

3. CORPORATIONS ☞16 — INCORPORATION — SUBSCRIPTIONS.

A corporate charter may be procured when entire stock has been subscribed and 50 per cent. of capital paid in, although certain subscribers had not paid half of their subscriptions.

4. CORPORATIONS ☞34(6)—INCORPORATION—NECESSITY OF PAYMENT OF STOCK SUBSCRIPTION—ESTOPPEL TO OBJECT.

A stock subscriber waived defense that subscription agreement and statute required each subscriber to pay half of his subscription before incorporation, where he actively assisted in incorporating company with knowledge of facts.

5. CORPORATIONS ☞80(12)—STOCK SUBSCRIPTION—EFFECT.

Where committee appointed by stock subscribers to complete company's incorporation falsely made affidavit that each had paid half of his subscription and secured charter, the original subscribers could elect to complete payment for stock or recover money already paid.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by the Panhandle Packing Company against Nannie T. Stringfellow. Judgment for defendant was reversed and rendered for plaintiff by Court of Civil Appeals (180 S. W. 145), and defendant brings error. Affirmed.

H. H. Cooper, of Houston, for plaintiff in error.

Madden, Trulove, Ryburn & Pipkin and Kimbrough, Underwood & Jackson, all of Amarillo, for defendant in error.

SADLER, J. The Panhandle Packing Company brought this suit against Mrs. Nannie T. Stringfellow, as independent executrix, to recover a stock subscription made by her husband. On a jury verdict in answer to special issues, judgment was rendered in the district court for the defendant. On appeal, the judgment of the lower court was reversed and judgment rendered for the packing company for the full amount of the subscription.

A statement of the pleading and facts

will be found in the opinion of the Court of Civil Appeals. 180 S. W. 145. We shall refer to such facts as are pertinent in the disposition of the writ of error.

Stringfellow and his six associates were selected as agents for the original subscribers to take such steps as were necessary to procure a charter for the company. The arrangement made for payment on their contracts by the subscribers was that Stringfellow and four others should act as the committee to whom payments should be made. These payments were to be deposited in the several banks of Amarillo. About $1,100 had been paid and deposited in the bank of which Stringfellow was president at the time the charter was filed with the Secretary of State.

About the 16th of October, 1908, these seven directors and agents for the subscribers determined that there had been sufficient stock subscribed to assure the necessary stock subscriptions to organization. They employed an attorney and began doing the things requisite to filing the charter with the Secretary of State.

It appears that they were advised that it would be necessary for each subscriber to make affidavit that the stock had been fully subscribed and that he had paid in 50 per cent. of his subscription before the charter could be filed; that this was a prerequisite to filing the charter.

After some discussion, it was decided that these directors should make affidavit that they had subscribed for the entire capital stock and that each had paid 50 per cent. of his subscription as set forth in the affidavit. This was done. Neither of these affiants complied with the affidavit except Butt, whose original subscription was the same as that set forth in the affidavit accompanying the charter.

[1] On the basis of this affidavit the charter was filed. We are of opinion that, under this arrangement, the seven directors who signed the charter and affidavit may, as to the state and the corporation, have been held to a performance of their contract; but this cannot affect the present inquiry, the question here being as to the liability of Stringfellow on his original subscription by reason of his acts taken in connection with the other circumstances in the case.

At the time the charter was signed and acknowledged, the affidavit could not be made. The entire stock had not been subscribed and 50 per cent. had not actually been paid in by the subscribers.

The question of making the affidavit then came up, and at this time came on the inquiry as to whether Stringfellow had paid 50 per cent. of his original subscription, to wit, $1,250. On his assurance that he had on that day paid same to the bank, thus making more than 50 per cent. of the stock paid in by the original subscribers on their contracts, the affidavit was made.

Had his representation been true, the question of whether 50 per cent. of the capital stock had been paid would not be an issue in this case. It is clear from the record that the seven parties executing the charter and the affidavit were dealing with the money and property of the original subscribers as the basis of the truth of the affidavit that 50 per cent. of the capital stock had been paid. Aside from Butt, neither of these signatories to the charter and affidavit paid in any part of the money recited in the affidavit as having been paid by the respective charterers, except such as they paid in virtue of their original subscription.

The evidence is without question in showing that the charter and affidavit were filed by these gentlemen on the strength of the money and property of the original subscribers, and to that extent in recognition and furtherance of the original purpose of the subscribers shown by the stock lists in evidence.

After the charter was filed, Stringfellow continued to act as director, and held the office of vice president of the company. Under his directorship, and with his knowledge, the company entered upon its books, and carried as stock assets, the original subscriptions. It charged each individual with the amount of his original subscription, and gave him credit for what he had paid thereon. Stringfellow's own subscription was thus carried, and the evidence does not disclose any protest by him. On the other hand, when called upon to pay, he does not deny liability, but gives assurance that the money will be ready when needed by the company.

At no time were any of the subscriptions set forth in the affidavit entered in the books of the company, or treated as binding obligations upon the directors, as new subscriptions, or in any other way.

[2] We are of opinion that the uncontroverted facts establish that the original subscriptions were not abandoned in the organization of the company, and that these directors were acting in a representative capacity for the original subscribers.

[3, 4] It is asserted that each subscriber must have paid in 50 per cent. of his subscription before the contracts could become binding. We are of the view that the law does not require that each subscriber to the organization of a corporation shall pay in 50 per cent. of his subscription before a charter can be secured or the subscription contracts become binding. Our view is that, under the statute, organization may be had and charter procured when the whole of the stock has been in good faith subscribed and 50 per cent. of the capital paid in to

the treasury of the organization. This question, however, is not requisite to the decision of this case. Stringfellow had knowledge of all the facts, and his acts are sufficient to establish a waiver on his part of such demand, even should it have been required under the statute or subscription contracts that each subscriber must pay in 50 per cent. of his subscription before the contracts become binding.

We are not willing to say, as a matter of law, that Stringfellow could use the money paid by the original subscribers as the basis for organization of the corporation, carry their subscriptions as assets, assert the validity of their obligations, reap the benefit of their money, and then escape his own responsibility by saying that these subscribers had not done all that the contract demanded.

[5] We think, under the facts in this case, the original subscribers to the stock could have either compelled the issuance to them of the stock for which each had subscribed, upon payment therefor, or have recovered the money which had been paid. They could have elected either course, but Stringfellow cannot avoid his liability, since he elected to be bound thereby.

Stringfellow should not be permitted to escape liability because other subscribers, who were not parties to or recipients of the benefits from the new arrangement, may have defeated payment. He was an agent for the original subscribers. He should be presumed in good conscience to have been acting in keeping with his agency in all matters pertaining to the organization of the company. He ought not now to be subjected to the charge of having repudiated a solemn duty to his associates.

In our opinion, the only act evidencing any failure on his part to abide by his original subscription and by his appointment is the failure to pay, and this is only proof of a delinquency to the corporation giving rise to its cause of action to enforce the payment.

We have been unable to find any evidence in this record justifying the submission to or answer by the jury of those issues declared immaterial by the Court of Civil Appeals. In our opinion, the evidence does not present any controverted issue. That as a matter of law plaintiff is entitled to recover on its demand is established by the uncontradicted evidence. On the evidence no jury question arises.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.