**STEVENS v. DAVENPORT et al.**
**(No. 12105.)**

Court of Civil Appeals of Texas. Fort Worth.
April 6, 1929.

Rehearing Denied May 11, 1929.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellant.

Smoot & Smoot and Kay-Akin & Smedley, all of Wichita Falls, for appellees.

DUNKLIN, J. On February 8, 1921, the Marigold Oil & Refining Company of Texas was declared a bankrupt in the United States District Court for the Northern District of Texas, and on the 9th of February, 1921, M. E. Stevens was duly appointed trustee of the estate of the bankrupt. Later A. G. Walker was appointed substitute trustee in place of Stevens, who had resigned. On October 26, 1921, M. E. Stevens, the trustee, was by the referee in bankruptcy given authority and power to make demand of E. D. Davenport, H. L. Hunter, F. B. Manley, A. M. Griffith, and J. M. Reynolds for the sum of $100,-000, which was the total capital stock for which the corporation was chartered, and which amount had been subscribed by those parties for stock; Davenport and Hunter each having subscribed for $5,000 of the capital stock, and Manley, Griffith, and Reynolds each having subscribed for $30,000 of the stock. The order further stipulated that the trustee, Stevens, was authorized and empowered to file and prosecute suits against each and all of said persons, jointly or severally, for the recovery of said amount of money, if the trustee's demand therefor should not be complied with. The charter of the Marigold Oil & Refining Company of Texas was filed in the office of the secretary of the state of Texas on July 5, 1919. In the charter the subscribers for stock mentioned above were all named as directors.

This suit was instituted by A. G. Walker, as substitute trustee, against E. D. Davenport and H. L. Hunter, to recover of each the full amount of their subscription for capital stock in the corporation, to wit, $5,000, with 6 per cent. interest from November 21, 1921. As a reason for not suing the other subscribers, namely, F. B. Manley, A. M. Griffith, and J. M. Reynolds, it was alleged that those subscribers do not reside in the state of Texas, but are beyond the jurisdiction of the court, and, further, that none of them own any property within the state which could be reached in order to acquire jurisdiction. In that connection, it was further alleged that those subscribers reside in the state of Kansas, and it was the intention of plaintiff to later bring suit against them in that state to recover the amount of their stock subscriptions to the insolvent corporation. The case was tried before a jury, and after the evidence was heard in behalf of all parties a verdict was returned in favor of the defendants in obedience to a peremptory instruction so to do from the trial court. From a judgment rendered in the defendant's favor, the plaintiff has prosecuted this appeal.

By a general demurrer the defendants challenged the sufficiency of plaintiff's petition to show a right of recovery against them, and, following a general denial, the defendants pleaded specially that none of the capital stock of the corporation was ever delivered to or received by them; that all of the capital stock, to the amount of $100,000, was issued by the corporation and delivered to persons other than the defendants, who paid therefor full value for the same, either in money or property, or by both money and property, of a total value or at least equal to the full amount of the capital stock; and that by reason thereof the defendants were not indebted to the corporation in any sum whatsoever.

In plaintiff's petition, following allegations of the procurement of the charter of the corporation under the laws of the state of Texas, and of the stock subscriptions by the defendants and Manley, Griffith, and Reynolds in the respective sums above mentioned, and of the fact that the charter was issued upon the affidavits of those parties that 50 per cent. of their respective subscriptions had in fact been paid in cash, and that the full amount of the capital stock had been subscribed, and that those subscriptions had not been paid, either in whole or in part, plaintiff further alleged that he had theretofore made application to the referee in bankruptcy for authority and instructions to demand of the defendants, and the other subscribers of stock, payment of the sums so subscribed, and for authority to institute suits against them to recover said amounts in the event they should fail to pay such subscriptions on demand, and that the referee in bankruptcy had granted said application.

Without contradiction, the proof showed the following facts: The Marigold Oil & Refining Company of Texas was organized and chartered by Davenport, Hunter, Manley, Griffith, and Reynolds at the instance and request of the Marigold Oil & Refining Company of Delaware, which was doing business in the state of Kansas, and·as a subsidiary of, or holding company for, said original company. There was an agreement on the part of the Delaware company with the defendants and their associates that the latter would not be required to pay for the stock so subscribed, but that the Delaware company would pay the same. However, it may be noted here that such understanding and agreement between the Delaware company and the parties above named was a secret understanding and agreement, and there was nothing of record to show notice thereof to the creditors of the Texas corporation, or any one else who might have dealings with it. None of the subscribers for stock of the Texas corporation ever parted with any valuable consideration as a payment on their stock subscriptions in the Texas corporation, although the two defendants each gave their respective checks for $2,500 payable to the Texas corporation, which were delivered to J. M. Reynolds, one of the subscribers, who was elected president of the Texas corporation, but neither of those checks was ever collected. None of the capital stock of the Texas corporation was ever issued to any of the subscribers therefor, but all of it was issued to the Delaware company, doing business in Kansas, and that corporation had the sole and exclusive control of the affairs of the Texas corporation; the subscribers to the stock and directors of the Texas corporation acting merely as intermediaries and agents for the accomplishment of that purpose.

As alleged in plaintiff's petition, the referee in bankruptcy entered an order granting the trustee, Stevens, authority to institute suit against the subscribers for stock in the Texas corporation for the unpaid amounts of their subscriptions; said application and order being made prior to the institution of this suit. Prior to that order claims were filed against the Texas corporation in the United States District Court for the Northern District of Texas, in which the bankruptcy proceedings were then pending, and were duly allowed in the aggregate sum of $13,420.52, all of which is still unpaid, and when this suit was begun other assets belonging to the bankruptcy estate did not exceed the aggregate sum of $600.

Neither before nor at the time the trustee was granted authority to institute suit against the defendants to recover the amount of their stock subscriptions was there any judicial determination in the bankruptcy court of the amount necessary to be collected from the subscribers of stock in the Texas corporation, in order to liquidate all claims against that corporation; nor was there any order of court fixing the amounts to be assessed against the respective subscribers of stock on a pro rata basis, in order to realize the amount required to liquidate all claims for indebtedness owing by the Texas corporation; and for lack of such a showing in both plaintiff's pleadings and in the proof offered by him the defendants insist that plaintiff showed no right of recovery against them, irrespective of the merits of other issues involved.

The leading case cited by defendants in support of this contention is Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968. In that case subscribers for stock of an incorporated company, under the statutes of Kansas, paid only 20 per cent. of their subscriptions upon an agreement by them with the company that the shares, purporting to be fully paid, would be issued to them in consideration of such payment. In an action at law to recover the unpaid balance of defendants' subscription, it was held that the agreement between the company and its subscribers was void as to creditors, but that no action at law could be maintained by the assignee in bankruptcy against such subscribers to recover the unpaid balance of their subscriptions until such agreement between the corporation and the stockholders be set aside by a court of equity, and an order procured from the bankruptcy court determining the amount required to pay the creditors of the bankrupt, and fixing the amounts to be assessed against the stockholders who have not paid the amount for which they subscribed, in order to raise the aggregate amount so required. It was further held that, until those steps be taken, no cause of action accrues against such stockholders. The following is an excerpt from the opinion in that case:

"The stock held by the defendant in error

was evidenced by certificates of full paid shares. It is conceded to have been the contract between him and the company that he should never be called upon to pay any further assessments upon it. The same contract was made with all the other shareholders, and the fact was known to all. As between them and the company this was a perfectly valid agreement. It was not forbidden by the charter of the company or by any law or public policy, and as between the company and its stockholders was just as binding as if it had been expressly authorized by the charter.

"If the company, for the purpose of increasing its business, had called upon the stockholders to pay up that part of their stock which had been satisfied 'by discount,' according to their contract the stockholders could have successfully resisted such a demand. No suit could have been maintained by the company to collect the unpaid stock for such a purpose. The shares were issued as full paid, on a fair understanding, and that bound the company. In fact, it has been held in recent English cases that not only is the company, but its creditors also, bound by such a contract [citing cases].

"But the doctrine of this court is that such a contract, though binding on the company, is a fraud in law on its creditors, which they could set aside; that when their rights intervene, and to satisfy their claims, the stockholders could be required to pay their stock in full [citing cases]. The reason is that the stock subscribed is considered in equity as a trust fund for the payment of creditors [citing cases]. It is so held out to the public, who have no means of knowing the private contracts made between the corporation and its stockholders. The creditor has, therefore, the right to presume that the stock subscribed has been or will be paid up, and, if it is not, a court of equity will at his instance require it to be paid."

It thus appears that liability of the stockholder to the creditors of the bankrupt was not based upon any contract with the corporation, but upon a principle of equity which would require him to respond to the creditors for the unpaid balance of his stock subscription, by reason of the fact that he had held himself out to the public as holding stock fully paid for. And since the unpaid stock subscription is considered a trust fund for the benefit of the creditors, and since the right of the creditors to thus require the stockholders to respond was an equitable right, it was held that the assignee in bankruptcy representing the creditors should first go into a court of equity and have the contract between the bankrupt corporation and the stockholders set aside as a fraud upon the creditors, and then have an adjudication by the bankruptcy court of the amount necessary to pay the creditors, and the amount required to be assessed against the several stockholders in order to raise a sum sufficient for that purpose. And, after those proceedings are had, then, and not until then, can a suit be brought by the assignee in bankruptcy in a court of law against the stockholders to collect the amount of the assessment so fixed.

That decision is clearly distinguishable from the present suit. In the first place, section 1 of article 12 of the Constitution of this state reads as follows: "No private corporation shall be created except by general laws."

Section 2 of the same article reads: "General laws shall be enacted providing for the creation of private corporations, and shall therein provide fully for the adequate protection of the public and of the individual stockholders.

Section 6 of the same article reads: "No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Chapter 2, title 32, of Revised Statutes of 1925, provides for the creation of private corporations. Article 1304 prescribes what must appear in the charter. Article 1308 reads as follows:

"Before the charter of a private corporation created for profit can be filed by the secretary of state, the full amount of its authorized capital stock must be in good faith subscribed by its stockholders and fifty per cent. thereof paid in cash, or its equivalent in other property or labor done, the product of which shall be worth to the company the actual value at which it was taken or at which the property was received. The affidavit of those who executed the charter shall be furnished to the Secretary of State, showing:

"1. The name, residence and postoffice address of each subscriber to the capital stock of such company;

"2. The amount subscribed by each, and the amount paid by each;

"3. The cash value of any property received, giving its description, location and from whom and the price at which it was received;

"4. The amount, character and value of labor done, from whom, and price at which it was received."

Article 1309 reads:

"If the secretary of state is not satisfied, he may, at the expense of the incorporators, require other satisfactory evidence before he shall be required to receive, file and record such charter."

Article 1337 authorizes a corporation to sue any of its members for any debt that may be due it, and article 1338 provides that any balance due from stockholders must be paid within two years from the date of the filing of the charter and proof of such payment within that time must be made to the secre-

tary of state. Article 1339 provides for the forfeiture of the charter of a corporation by the secretary of state, in the event the capital stock shall not be fully paid within two years from and after the date of the filing of the charter. Article 1345 provides that execution may issue against any stockholder for an amount equal to his unpaid stock subscription to satisfy a judgment against the corporation, except a railway or a religious or charitable corporation, whenever a sufficient amount of property belonging to the corporation cannot be found to satisfy the judgment; such execution to be issued upon an order of the court in obedience to a motion therefor, or that the plaintiff in execution may proceed by action to charge the stockholders with the amount of his judgment, in accordance with the liability of the stockholders.

It follows, therefore, that under the Constitution and laws of Texas any contract between a corporation and the subscribers for its stock, that the latter will not be required to pay the full amount of their stock subscriptions, is void as a matter of law, and when that fact is established a proceeding in equity to cancel such a contract is not required. See Thompson v. First State Bank of Amarillo, 109 Tex. 419, 211 S. W. 977; Stringfellow v. Panhandle Packing Co. (Tex. Com. App.) 213 S. W. 250, San Antonio Hdw. Co. v. Sanger (Tex. Civ App.) 151 S. W. 1104; Rich v. Park (Tex. Civ. App.) 177 S. W. 184; O'Bear-Nester Glass Co. v. Antiexplo Co., 101 Tex. 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865. Furthermore, in the present suit the agreement pleaded by the defendants in this case, to the effect that, as a condition for their undertaking to procure the charter of the Texas corporation, it was understood and agreed that they would not be required to pay the amount of their subscriptions, was not an agreement with the Texas corporation, but with the officers of the Delaware company, acting for it.

■ In the next place, the subscription contract for stock by the defendants and their associates, who procured the charter of the Texas corporation, was a definite and unconditional contract to pay the respective amounts of those subscriptions, and just as binding as any other contract to pay money. And to sustain the contention of the defendants, to the effect that they are not liable on their contract until an assessment be made against them by the bankruptcy court in a preliminary proceeding determining the amount for which they are chargeable, and such an assessment to be made on a pro rata basis with all other stockholders, the aggregate amount of which not to exceed the total amount required to pay all the creditors, would be to vary the terms of their subscription contract to pay the sums subscribed, all upon evidence

extraneous to their written contracts and constituting no part thereof, which cannot be done. Furthermore, the aggregate amounts subscribed by the two defendants in this case, if collected, will be insufficient to pay the claims already allowed against the bankrupt, as shown above. In this connection it is to be noted that the other subscribers for stock are beyond the jurisdiction of the courts of this state, which is a sufficient justification of the action of plaintiff in suing the defendants in this case for the full amount of their subscriptions, at all events.

If for any reason it could be shown with certainty that the full amounts subscribed by the two defendants will not be required to satisfy the creditors of the bankrupt, then it might be argued with some show of reason that only so much should be collected from them as is necessary to liquidate such debts and the court costs of the bankruptcy proceedings, since the bankrupt has ceased to do business, and since in the final order of court closing the administration doubtless the court would decree a return to the defendants of any excess so collected from them over and above the amount required for the purpose mentioned. But the burden would be on the defendants to plead and prove such facts, in order to overcome the prima facie case made by the plaintiff, as shown above; and even though that would be an equitable defense, if tenable, still, under our blended system of procedure, it could be available as against plaintiff's suit to enforce a legal demand.

■ Moreover, it is our conclusion that, in order to sustain such a defense, it would not be sufficient for defendants to plead and prove that the other subscribers for stock in the bankrupt corporation are solvent and have property subject to execution sufficient to satisfy their subscription contracts, since defendants' contracts for stock were not conditioned upon any such a contingency, but were absolute and unconditional agreements to pay the respective amounts subscribed. If defendants have a right of contribution against the other subscribers, we perceive no valid reason why that right cannot be asserted in a separate action instituted by them. It seems clear to us that defendants have not the right to require plaintiff in this suit to first sue the other subscribers in the state of Kansas, and then sue defendants herein for a balance that might remain unpaid by those persons, and in which action plaintiff would doubtless be met with the same defense urged by defendants in this suit. Accordingly we have reached the conclusion that the defense urged to the plaintiff's suit discussed above was without merit, and in addition to authorities above cited see, also, Mitchell v. Bowles (Tex. Civ. App.) 248 S. W. 459; Jeffery v. Selwyn, 220 N. Y. 77, 115 N. E. 275, 6 A. L. R. 1111.

The defendants were introduced as witness-

es on their own behalf, and their testimony was to the effect that, in pursuance of the preliminary agreement between them and the officers of the Delaware corporation, that corporation entered on its books a credit of $50,-000 in favor of the Texas corporation, at or about the time the charter of the latter company was procured; that later that credit was eliminated, and in lieu thereof certain leases were transferred to the Texas corporation by the Delaware company; and that the leases so transferred were of an aggregate reasonable value more than the entire capital stock of the Texas corporation. However, no such leases were introduced in evidence, and the estimates of the witnesses of their value seem to have consisted principally of the amounts which the Delaware company had paid for them; nor did the witnesses give the dates of the assignment of those leases, or attempt to give their market values on the dates of their respective transfers.

[4, 5] Of course, if the defendants' stock subscriptions were fully paid by the Delaware company to the Texas corporation in discharge of the defendants' obligations therefor, in the manner required by the statutes of this state, and if such payments were made in good faith and for the benefit of the Texas corporation and its creditors, then it would follow that the defendants' stock subscriptions were fully discharged. But the weight of the testimony of the defendants on that issue was for determination by the jury, and the court could not by peremptory instructions take the determination thereof from the jury. Aside from the inconclusive character of such testimony, the same came from interested witnesses, and plaintiff introduced a copy of the petition filed by defendant E. D. Davenport and several others in the federal court some 28 days after the Texas corporation, acting by and through its president, J. M. Reynolds, had filed a voluntary petition in bankruptcy in that court. The petition so filed by Davenport and others contained allegations that they were creditors of the Texas corporation; that the same was organized as a dummy for the Delaware corporation; that the latter company had manipulated and controlled the affairs of the Texas corporation for its own and exclusive benefit; that it had failed to pay for the stock which had been subscribed by Davenport and others in the Texas corporation, as it had agreed to do, and now owes to the Texas corporation therefor $99,400; and further allegations to the effect that the purported credit of $50,000 entered on the books of the Delaware company in favor of the Texas corporation was fictitious, and that the Delaware company had never, in fact, assigned to the Texas corporation any oil leases, as the Delaware company had attempted to show by fictitious entries on its books, and which leases were worthless, and that the business of the two companies had become so intermingled as to render it difficult to separate them.

The petition so filed by said creditors was in reply to the voluntary petition in bankruptcy, and for the purpose of compelling the Texas corporation to make the Delaware company a party to the bankruptcy proceedings. That petition was duly verified by E. D. Davenport, one of the defendants in this suit, and it could have been considered by the jury in weighing the testimony of defendant Davenport given on the trial, if that document had been read to them in evidence. Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447; Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 972; West Lumber Co. v. Goodrich (Tex. Com. App.) 223 S. W. 183; Schumann v. Brownwood Mut. Life Ins. Ass'n (Tex. Com. App.) 286 S. W. 200.

The description of the judgment of the trial court, embodied in appellant's appeal bond, was reasonably sufficient to identify that judgment, and accordingly appellees' contention to the contrary is overruled. Furthermore, appellees waived any right to raise that point by failure to present that objection by motion filed within 30 days after filing of the transcript, as required by rules 8 and 9 governing Courts of Civil Appeals.

Nor is there merit in appellees' objection to consideration by this court of two documents appearing in the statement of facts, namely, the petition in bankruptcy filed by the Texas corporation in the federal court, and the reply thereto filed in the same court by the creditors, on the ground that, as shown in the certificate of approval of the statement of facts by the trial judge, those documents, although admitted in evidence, were not read to the jury or to the court, "but were understood to be merely the best evidence as to the bankruptcy adjudication." The issue as to whether there had been such an adjudication was one for determination by the court, as a matter of law, and, those documents having been admitted for that purpose, it was the duty of the court to consider them in determining that issue. For that reason, also, those documents could not be stricken from the statement of facts by this court.

For the reasons noted, the judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with our foregoing conclusions.